The **TRANE COMPANY, A DIVISION OF AMERICAN STANDARD, INC.,** Plaintiff–Appellant,

v.

**WHITEHURST–LASSEN CONSTRUCTION COMPANY; United States Fidelity and Guaranty Company,** Defendants–Appellees.

No. 88–7543.

United States Court of Appeals, Eleventh Circuit.

Aug. 24, 1989.

Marvin L. Stewart, Jr., Najjar, Denaburg, Meyerson, Zarzaur, Max, Wright & Schwartz, Birmingham, Ala., for plaintiff-appellant.

Donald W. Lang, Sylacauga, Ala., for Whitehurst.

M. Clay Ragsdale, IV, Starnes & Atchison, Henry E. Simpson, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for USF & G Co.

Before CLARK and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

This appeal arises from an action that a supplier, The Trane Company ("Trane"), filed against a general contractor, Whitehurst–Lassen Construction Company ("Whitehurst–Lassen"), and the United States Fidelity and Guaranty Company ("USF & G") on September 10, 1987. The suit alleges a breach of a labor and material payment bond required under the Alabama Public Works Statute, Ala.Code § 39–1–1 (1975). The district court entered judgment for the general contractor and surety. We reverse.

## I.  Background

### A.  Facts

Whitehurst–Lassen and the Shelby County Board of Education entered a contract for the renovation of a cafeteria at the Montevallo Middle School in Shelby County, Alabama ("the Montevallo job"). Whitehurst–Lassen was the prime contractor on the Montevallo job. As required under

Alabama's Public Works Statute, Ala.Code § 39–1–1, Whitehurst–Lassen and USF & G executed a labor and material payment bond on May 5, 1986 ("payment bond"). The payment bond secured payment to persons furnishing labor or materials on the Montevallo job.

Trane is a supplier of air-conditioning and heating equipment and had successfully bid to provide equipment to Adams & Kilgore, Inc. ("Adams & Kilgore"), the mechanical subcontractor on the Montevallo job.[1] Adams & Kilgore's bid was for approximately $84,400. Although Whitehurst–Lassen was unaware that Adams & Kilgore was experiencing financial difficulties at the time it accepted Adams & Kilgore's subcontractor bid, it became aware of these problems early in the Montevallo project.

On May 19, 1986, Adams & Kilgore submitted a purchase order to Trane for six "fan coil units," two "air handling units" ("the air-conditioning equipment") and a "chiller." At that time, Adams & Kilgore owed Trane about $60,000 on other jobs unrelated to the Montevallo job which was more than sixty days past due. Trane's credit department placed a "credit hold" on Adam–Kilgore's account which prevented the production of the equipment requested in the May 19, 1986 purchase order. Because of the importance of completing the cafeteria for the fall school year, Trane's sales engineer, William Faulkner ("Faulkner") requested during June that the credit status of Adams & Kilgore be changed to "credit hold at ship dock." This action permitted the production of the air-conditioning equipment and the chiller but prevented its shipment until the "credit hold" had been lifted. When the air-conditioning equipment was ready for shipment, Faulkner spoke to Jerry Adams (of Adams & Kilgore) and informed him that Trane was holding the air-conditioning equipment at its shipping dock due to the past due condition of Adams & Kilgore's account. Faulkner requested that Adams contact Whitehurst–Lassen and inform them that Trane would be contacting Whitehurst–Lassen soon.

Thereafter, Faulkner telephoned Whitehurst–Lassen and spoke with Paul B. Whitehurst, Jr. ("Whitehurst"), Whitehurst–Lassen's vice president. Faulkner told Whitehurst that because Trane was having credit problems with Adams & Kilgore's account, the account was subject to a credit hold. Faulkner stated that Trane would require a purchase order directly from Whitehurst–Lassen before this equipment would be shipped. Neither Faulkner nor Whitehurst testified that they discussed the chiller in their conversation.[2] Whitehurst testified that he thought the purchase order was for all the remaining equipment on the Montevallo job and that Trane would not conduct any further business with Adams & Kilgore.[3]

Whitehurst then connected Faulkner with his son, Mark Whitehurst, with whom Faulkner discussed the details of the purchase order. Faulkner stated that he did not discuss the chiller with Mark White-

---

1. Adams–Kilgore, which later went into bankruptcy, is not a party to this lawsuit.

2. Faulkner only testified that he spoke briefly with Whitehurst who then turned the matter over to his son, Mark. R.2–45. Whitehurst's testimony regarding the substance of his phone conversation with Faulkner is contained in a few brief passages. On direct, Whitehurst stated:

   [Faulkner] called and identified himself as a representative of Trane. He said that they had a contract to furnish the materials on this project, to Adams & Kilgore, and that they couldn't do business with Adams & Kilgore because of their credit problems. And he says "Now if you want this material, we are going to have to sell it to you." And I says, "okay, well, fine, okay." And I says, "How much is it going to be?" And he says "Nine thousand nine hundred and some odd dollars." And I said, "That's fine. We will send you a purchase order for this."
   R.2–117.

3. Whitehurst stated that Faulkner represented "that we are talking about the whole ball of wax. He says, 'We have a contract for the equipment and we can't sell it to anybody unless you want to purchase it.' He used the word, 'this equipment.'" R.2–124. On cross-examination, Whitehurst further stated that Faulkner said "'We cannot,' and I quote him exactly, 'We cannot do business with Adams & Kilgore.'" Id. at 132.

hurst in their phone conversation.[4] Whitehurst–Lassen provided Faulkner with a purchase order number and later issued a purchase order dated August 15, 1986 for the air conditioning equipment in the amount of $9,952.00. The chiller, however, was not included in this purchase order.[5] Trane shipped the air conditioning equipment to the job site as it was completed on August 8, 12, and 15, 1986. Trane did not ship the chiller or submit a purchase order to Whitehurst–Lassen for the chiller at this time. Whitehurst–Lassen did not remit to Trane the $9,952.00 owed.

Whitehurst–Lassen terminated its contract with Adams & Kilgore on September 2, 1986 and immediately replaced Adams & Kilgore with an independent contractor at a cost of $35,000. R.2–135. Whitehurst–Lassen, however, did not inform Trane of Adams & Kilgore's termination or the substitution of the new subcontractor. Whitehurst–Lassen then withheld the sums due "known suppliers," including the $9,952 due Trane for the air-conditioning equipment, and settled with Adams & Kilgore. Whitehurst–Lassen provided no evidence that it had paid Adams & Kilgore for the chiller in the settlement.[6]

Trane states that because Adams & Kilgore had brought its account forward, it lifted the "hold at ship dock" status on the chiller and shipped it to the job site on September 2 where it arrived on September 7.[7] At this time, Trane was still unaware that Whitehurst–Lassen had terminated Adams & Kilgore. Trane billed Adams & Kilgore for the chiller on September 2. Trane soon discovered that Adams & Kilgore were no longer on the Montevallo job and submitted the $15,649.52 chiller bill to

Whitehurst–Lassen on September 4, 1986. Upon receipt of the bill, Whitehurst telephoned Trane's credit department for an explanation of why Whitehurst–Lassen had been billed for an amount in excess of its August 15th purchase order. During this conversation he claims the Trane representative stated, "Gee, you know, we have just made a terrible mistake here," implying that Trane should have notified Whitehurst–Lassen about the chiller bill and that the bill was erroneously sent to Whitehurst–Lassen. R. 2–120.

Whitehurst–Lassen failed to pay for either the air conditioning equipment or the chiller. In March, 1987, Trane wrote a demand letter to Whitehurst–Lassen demanding payment on the air-conditioning equipment (not including the chiller). Whitehurst–Lassen did not pay and Trane instituted this litigation.

### B. District Court Proceedings

Trane filed a two-count complaint on September 10, 1987. Count I claimed that Whitehurst–Lassen and USF & G owed Trane $26,000 under the payment bond for both the air-conditioning equipment and the chiller plus interest and attorney's fees. Count II claimed that Whitehurst–Lassen breached an agreement to pay for the air conditioning equipment under the purchase order. USF & G denied the allegations and claimed that Trane was not entitled to assert a claim under the payment bond.

Whitehurst–Lassen answered and admitted it was indebted to Trane for the $10,350.08 of air-conditioning equipment; however, it denied liability for the chiller. It claimed that it had contracted with Trane

---

**4.** Faulkner testified that Mark Whitehurst "said he would mail me a purchase order so that we could ship those fan coils and two air handlers to the job, get them on the job, get them installed." R.2–45. Faulkner further stated that he did not discuss the chiller with Mark Whitehurst. *Id.* Mark Whitehurst was not a witness at trial.

**5.** Faulkner testified that the fan coil and air handling units were "inside equipment" and had to be shipped immediately for internal installation. He stated that the chiller was not included in this purchase order because it was "out-

side equipment" meaning it could be installed outside the cafeteria at a later date without delaying construction. R.2–45.

**6.** Whitehurst–Lassen's settlement agreement with Adams & Kilgore is not in the record, and Whitehurst's testimony regarding the settlement is indeterminate on whether Whitehurst–Lassen paid Adams & Kilgore for the chiller.

**7.** The chiller was originally misdelivered to another job site where Adams–Kilgore had been a subcontractor.

**1000**

for the provision of *all* materials and supplies for the Montevallo job for a total of $10,350.08 "and no more." USF & G and Whitehurst–Lassen, however, failed to raise any of the following affirmative defenses: estoppel, novation, waiver, or accord and satisfaction.[8]

On December 21, 1987, the district court granted Trane's motion for partial summary judgment against Whitehurst–Lassen and USF & G for the air conditioning equipment in the amount of $14,370 (which included interest and attorney's fees). USF & G promptly paid this amount on Whitehurst–Lassen's behalf.

The remaining issue was whether Whitehurst–Lassen and USF & G were liable for the chiller. Following a bench trial, the district court entered judgment for Whitehurst–Lassen and USF & G on August 9, 1988. The court concluded that because Trane had "promised" Whitehurst–Lassen that it would not sell anything further to Adams & Kilgore, its subsequent conduct in shipping the chiller constituted a breach of the new agreement removing Trane from the protection of Ala.Code § 39–1–1 (1975).[9] The district court held:

> The crucial fact is that Trane *promised* Whitehurst–Lassen that it would not sell anything to Adams & Kilgore for this job, and Whitehurst–Lassen, in response to this promise, acted to its detriment, thus creating a binding contract.

Order at 6 (emphasis added). The district court held that Trane's breach of its oral agreement not to sell to Adams & Kilgore constituted a waiver of the public works statute's protections:

> While Whitehurst–Lassen characterizes its defense as "estoppel," in the opinion of this court, the better characterization of its defense is "breach of contract," although there may be elements of estop-

pel in the creation of the contract. The new contract did constitute a waiver of Trane's rights under § 39–1–1 and committed it to a new course of dealing which it impliedly recognized by sending its belated invoice to Whitehurst–Lassen after Adams & Kilgore failed to pay. In this sense, Trane is 'estopped' from claiming under the public bonding statute. If Trane had honored its 'new deal' not to sell to Adams & Kilgore, and if Whitehurst–Lassen had failed to pay, Trane would not only have a cause of action *ex contractu* against Whitehurst–Lassen (which it admits it does not have) but a claim under § 39–1–1. By by-passing Whitehurst–Lassen after its promise not to do so, Trane removed itself from the protection of § 39–1–1. Unless it can recover from Adams & Kilgore, it has kissed its claim for its 'chiller' goodbye. When Trane's credit department said to Whitehurst–Lassen, "We've made a horrible mistake," Trane was telling the truth.

Order at 7–8. Trane filed a timely appeal on August 29, 1988.

Before consideration of the law governing this case, we review certain syllogisms used by the district court and quoted above. The conclusions of the district court are logical on their face, but inconsistent with the facts of the case as we understand them. Although Trane has not been paid for the chiller, it has been installed in the school project, and Whitehurst–Lassen has not paid anyone for the cost of the chiller.

We conclude that the district court's hypothesis "(i)f Trane had honored its 'new deal' not to sell to Adams & Kilgore, and if Whitehurst–Lassen had failed to pay, Trane would [have] ... a claim under § 39–1–1." has two faulty premises. It

---

**8.** USF & G filed a cross-claim against Whitehurst–Lassen and a third-party complaint against appellees Harold F. Lassen and Betty C. Lassen, and Paul Whitehurst alleging breach of the Master Surety Agreement for the payment bond. The Master–Surety Agreement was subject to further litigation between Whitehurst–Lassen, Harold F. Lassen, Betty C. Lassen, Paul Whitehurst and USF & G. Although the additional litigation was consolidated in this suit,

the issues arising in that litigation are not involved in this appeal.

**9.** The district court rejected Whitehurst–Lassen's unpled defense of accord and satisfaction because "the payment of $9,952.00 was not in nature of the compromise of a then disputed claim."

assumes Trane sold the chiller to Adams & Kilgore and that Whitehurst–Lassen paid Adams–Kilgore. Trane did ship and invoice the chiller to Adams at a time when it did not know that Whitehurst had terminated Adams. However, it immediately corrected the mistake by transhipping the chiller to the school project where it was installed and Whitehurst was promptly invoiced.

Second, the district court, in concluding that Trane was estopped from seeking payment under the statute, stated in part "... Whitehurst–Lassen, in response to this [Trane's] promise, acted to its detriment, thus creating a binding contract." Yet, there is absolutely no evidence that Whitehurst–Lassen acted to its detriment. It received a chiller from Trane that Whitehurst–Lassen *had* to install in the school. But Whitehurst–Lassen has up to this moment not paid, as the expression goes, "one thin dime" for the chiller.

Third, the district court stated "[u]nless it [Trane] can recover from Adams & Kilgore, it has kissed its claim for its 'chiller' goodbye." This too has a faulty premise. Trane cannot collect from Adams & Kilgore for a chiller Adams & Kilgore never received and for which it was not paid by Whitehurst when the later terminated the subcontract.

In contrast to the cases to be discussed, where the contractor or surety is subject to double payment for the same material or wages, Whitehurst–Lassen and USF & G are only being required to pay for materials that went into the school.

## II. Discussion

### A. Alabama's Public Works Statute

Alabama's Public Work statute, § 39-1-1, requires public contractors to execute a bond which secures payment to individuals who furnish labor and materials in the performance of government contracts. *Universal Elec. Constr. Co. v. Robbins*, 239 Ala. 105, 194 So. 194, 198 (1940) (interpreting predecessor statute); *Headley v. Housing Auth. of Prattville*, 347 So.2d 532, 534–35 (Ala.Civ.App.1977); Ala.Code § 39-1-1 (1988). The statute, which is patterned after and interpreted in accord with the federal Miller Act, 40 U.S.C. §§ 270a–270d, is highly remedial in nature and is liberally construed to effectuate its purpose of ensuring that suppliers receive full compensation for the labor or materials they provide to public works projects. *Sumlin v. Hagen Storm Fence Co.*, 409 So.2d 818, 820 (Ala.1982); *Headley*, 347 So.2d at 535; *see also United States v. Aetna Ins. Co.*, 831 F.2d 978, 980 (11th Cir.1987) (construing Miller Act); *United States v. Glassman*, 397 F.2d 8, 10 (4th Cir.1968) (same). Because the purpose of the Alabama statute and the Miller Act are identical, both are interpreted in the same manner. *Price v. H.L. Coble Constr. Co.*, 317 F.2d 312, 315 (5th Cir.1963); *Headley*, 347 So.2d at 534–35. Thus, because the body of Alabama law interpreting § 39-1-1 is limited, federal courts' interpretations of the Miller Act will primarily guide our analysis of the questions raised under § 39-1-1 in this appeal.

The principal issue raised is whether the facts establish that Trane has relinquished its statutory right to payment for the chiller under the payment bond. It is undisputed that Trane is entitled to payment for the chiller unless Whitehurst–Lassen and USF & G assert and prove a valid defense.[10] The district court's opinion, which denies Trane recovery, relies upon, and is a conglomeration of, the following three defenses: waiver, novation, and estoppel.[11] Our task is to determine whether record evidence supports the district court's findings under the appropriate legal standard.

**10.** Trane established the four elements necessary to collect under a payment bond: (1) that materials were supplied for work in the particular contract at issue; (2) that the supplier is unpaid; (3) that the supplier had a good faith belief that the materials were for the specified work; and (4) that jurisdictional prerequisites are met. *United States v. Aetna Ins. Co.*, 831 F.2d 978, 980 (11th Cir.1987) (construing section 270b of the Miller Act).

**11.** The court rejected an accord and satisfaction defense.

The legal standard for determining whether a supplier has relinquished its statutory rights is firmly established: absent a novation or clear expression to the contrary, a supplier does not forfeit its right to sue under the public works statute. *United States v. Forrester,* 441 F.2d 779, 782 (5th Cir.1971); *Warrior Constructors Inc. v. Harders, Inc.,* 387 F.2d 727, 729 (5th Cir.1967).

> The right to sue on a surety bond is a right created by statute, and in the absence of a novation or clear expression to the contrary, the contention that there has been a waiver or release of that right must fail.

*Forrester,* 441 F.2d at 782; *Warrior,* 387 F.2d at 729. Thus, absent a novation, waiver, estoppel, or other clear and explicit relinquishment of the statutory right, a supplier is entitled to pursue payment under a bond. *Glassman,* 397 F.2d at 10 (express waiver must be both clear and explicit); *see also Forrester,* 441 F.2d at 783 (estoppel a valid defense under the Miller Act); *Glassman,* 397 F.2d at 11 (same); *Graybar Elec. Co. v. John A. Volpe Constr. Co.,* 387 F.2d 55, 59 (5th Cir.1967) (same); *United States v. James Stewart Co.,* 336 F.2d 777, 779 (9th Cir.1964) (same).

Based on this strict legal standard and our review of the record, we hold that the evidence fails to support the district court's legal conclusion that Trane clearly and explicitly relinquished its right to recover under the payment bond. Whitehurst–Lassen and USF & G failed to provide a sufficient evidentiary base to support a defense based on either a novation, waiver or estoppel theory. Our review of the district court's order indicates that the court's erroneous legal conclusion arises from its intermingling the analysis of these three defenses rather than analyzing them separately. We therefore analyze each defense individually.

### B. Novation Theory

■ The district court primarily relied upon a novation-type theory to support its conclusion that Trane relinquished its statutory rights. The district court's theory is that Trane's request for a purchase order for the air conditioning equipment and its alleged oral "promise" not to sell further to Adams & Kilgore amounted to a new contract and a new course of dealing which substituted for Trane's original contract with Adams & Kilgore. The record however fails to establish that Trane intentionally relinquished its statutory rights by entering a new contract with Whitehurst–Lassen in place of the pre-existing agreement with Adams & Kilgore.

A novation "is the substitution of one contract for another, the effect of which is to release him who is bound by the original contract of which novation is asserted. To affect a novation the parties must agree that the new agreement has that effect. The new agreement must meet all the requisites as to validity of a contract." *Cammorata v. Woodruff,* 445 So.2d 867, 872 (Ala.1983) (citations omitted). Thus, a novation requires that there be mutual assent to a new agreement, consideration, and definite terms to which the parties could be bound under the new agreement. *Id.*

The record testimony of Faulkner and Whitehurst provides no basis for concluding that there was the requisite mutual assent, consideration, or definitive terms. First, Trane's representative, Faulkner, testified that Trane still had a commitment to provide Adams & Kilgore with the chiller pursuant to a previous purchase order. Faulkner's testimony, which the district court found credible, establishes that Trane did not intend that the purchase order agreement for the air conditioning equipment substitute for Trane's prior agreement with Adams & Kilgore for both the air conditioning equipment *and* the chiller. Instead, Trane intended only that the air conditioning equipment which was at the shipping dock awaiting delivery be included in the August 15th purchase order. It is difficult to conclude that Whitehurst believed the purchase order was for the "whole ball of wax," including the chiller, because the purchase order from Whitehurst–Lassen to Trane dated August 15, 1986, did not include the chiller.

Second, there was no "meeting of the minds" regarding a "new" contract price. Unquestionably, Trane did not agree to accept the $9,952 purchase order as consideration for both the air conditioning equipment *and* the chiller. If Trane had intended that the purchase order include both the inside air conditioning equipment and the outside chiller, it would have requested a purchase order for the entire $26,000 which was due under Trane's original purchase order with Adams & Kilgore.

Third, even assuming Trane "promised" not to deal further with Adams & Kilgore as part of the new contract with Whitehurst–Lassen, Trane did not breach this promise. It is undisputed that Trane had an obligation to fabricate and ship the chiller used on the Montevallo job. Trane fulfilled its obligation and initially sent the chiller bill to Adams & Kilgore on the assumption that Adams & Kilgore was still on the job. Trane quickly redirected the bill to Whitehurst–Lassen upon discovering that Adams & Kilgore had been terminated. Thus, there has been at most a simple billing error in this case—not a breach of a new agreement.

## C. Waiver Theory

■ Under a waiver theory, Whitehurst–Lassen and USF & G have the burden of proving that Trane expressly intended to relinquish its statutory rights through a clear and explicit waiver. The district court based its holding, in part, on the theory that Trane waived its statutory rights by requesting a purchase order for the air conditioning equipment. Trane's request for the August 15, 1986 purchase order for the air conditioning equipment, however, was akin to a request for additional security which the case law holds does not constitute a waiver of statutory rights. For example, in *United States v. Glassman*, 397 F.2d 8 (4th Cir.1968), a general contractor issued joint checks payable to both the sub-contractors and the materialman which contained waiver clauses to cover the costs of supplies the materialman had provided. Because the subcontractor was experiencing financial problems, the materialman allowed the subcontractor to retain more than its proportionate share of the checks. After the subcontractor defaulted, the materialman instituted a Miller Act claim and the general contractor defended on the basis of estoppel, waiver, and payment.

The *Glassman* Court held that where a general contractor attempts to avoid its statutory liability under a waiver theory, it must prove the supplier clearly and explicitly waived its rights under the payment bond. *Id.* at 10. "Absent the clear language of an express waiver, we think none is to be implied; as we have held in the past, requesting and accepting 'additional security' does not indicate an intention to waive the right to that already in hand." *Id.* at 11 (citations omitted).

Similarly, in *United States v. Forrester*, 441 F.2d 779 (5th Cir.1971), the former Fifth Circuit adopted *Glassman*'s rationale in holding that a supplier's request that the general subcontractor issue checks payable to both the subcontractor and the supplier was simply a request for and acceptance of "additional security" and did not constitute a waiver of the supplier's right of recovery under a payment bond. *Id.* at 782–83 (citing *Glassman*). The Court stated that the supplier's acceptance of the joint check, without more, did not deny the supplier its Miller Act protections. *Id.* at 783.

Based on *Forrester* and *Glassman*, we believe that Trane's request for a purchase order for the air conditioning equipment does not constitute a waiver of its statutory rights to compensation under the payment bond. The record evidence establishes that Trane simply requested additional security in the form of a purchase order from Whitehurst–Lassen due to Adams & Kilgore's current financial instability. There is no evidence that Trane intended to explicitly waive its statutory rights. Nor is there evidence that Trane signed a release form or agreed to forego payment on the chiller. In sum, we hold that Trane's request for a purchase order from Whitehurst–Lassen is legally insufficient to support a finding that Trane relinquished its rights under § 39–1–1 based on an express waiver theory.

### D. Estoppel Argument

■ Although estoppel is a defense under the Miller Act, *Forrester*, 441 F.2d at 783; *Glassman*, 397 F.2d at 11; *United States v. James Stewart Co.*, 336 F.2d 777, 779 (9th Cir.1964); *Moyer v. United States*, 206 F.2d 57, 60–61 (4th Cir.1953), courts are hesitant to estop suppliers from recovery under a surety bond absent a supplier's fraud or negligence. *United States v. Aetna Ins. Co.*, 831 F.2d at 983 & n. 3 (a finding of estoppel should not come lightly and only where the supplier's irresponsibility is sufficiently great); *Moyer*, 206 F.2d at 60–61 (materialman's fraud in providing false receipts to subcontractor estops recovery). The remedial nature of the Miller Act requires that a general contractor asserting an estoppel defense do everything it reasonably can to protect itself short of completely taking over the operation of the subcontractor. *Id.*

The equitable estoppel doctrine "precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose a material fact." *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir.1984). Estoppel requires (1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Id.* at 413. Under the Miller Act, the party claiming an estoppel, however, must show he has been misled to his detriment. *U.S. ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1154 (9th Cir.1987) (finding no detriment); *Forrester*, 441 F.2d at 783 (finding no detriment); *Glassman*, 397 F.2d at 11 (finding no detriment); *Graybar Elec. Co.*, 387 F.2d at 59 (finding prejudice); *James Stewart Co.*, 336 F.2d at 779 (9th Cir.1964) (finding prejudice); *Moyer*, 206 F.2d at 60–61 (finding no detriment).

For instance, in *James Stewart Co.*, a subcontractor's materialman had promised to tell the general contractor if the subcontractor failed to pay for materials. The general contractor continued paying the subcontractor for materials and the subcontractor subsequently went bankrupt. The materialman, however, had failed to tell the general contractor that the subcontractor had not paid for materials. The Ninth Circuit upheld the district court's holding that the materialman was estopped from recovery under the Miller Act because the general contractor had relied to its detriment on the materialman's promise. 336 F.2d at 779. The detriment in *James Stewart Co.* was clear: the general contractor paid funds to the subcontractor to which the materialman would have been entitled had the materialman complied with its agreement with the general contractor.

In this action, however, there is no record evidence that Whitehurst–Lassen has suffered any detriment. The basis of Whitehurst–Lassen's estoppel claim is that Trane allegedly misled Whitehurst–Lassen into believing that Trane's request for a purchase order for the air conditioning equipment constituted Trane's entire claim for *all* equipment Trane would provide on the Montevallo job. Thus, the detriment which Whitehurst–Lassen alleges it has suffered is a $15,600 settlement overpayment to Adams & Kilgore for the chiller. The record, however, is devoid of evidence that Whitehurst–Lassen paid Adams & Kilgore for the chiller—Whitehurst–Lassen therefore has not suffered any legal detriment.

Further, the evidence fails to establish that Trane misrepresented any matter or failed to disclose a material fact. Trane did not represent that the purchase order was for all the air-conditioning equipment including the chiller. Trane simply requested the additional security of a purchase order from Whitehurst–Lassen for the air conditioning equipment because of Adams & Kilgore's then current financial instability. Faulkner testified that Trane contemplated further dealings with Adams & Kilgore and sent the chiller to the Montevallo job site only after Adams & Kilgore brought its account forward (but before Trane knew that Whitehurst–Lassen termi-

nated Adams & Kilgore). Thus, Trane is not estopped because it did not misrepresent its intentions.

Trane also had a legitimate belief that Whitehurst–Lassen knew or should have known that the $9,952.00 purchase order did not cover all of the equipment Trane was required to provide. A party asserting an estoppel theory must have neither knowledge of, nor a reasonable means or opportunity of obtaining knowledge of, the facts in dispute. *Myers v. Fidelity & Cas. Co. of New York*, 759 F.2d 1542, 1548 n. 9 (11th Cir.1985). Here, the parties dispute whether Whitehurst–Lassen knew, or should have known, that the chiller was part of the Montevallo job. Trane's position is that Whitehurst–Lassen, as the general contractor, had the opportunity to know what equipment Trane was providing by simply looking at Adams & Kilgore's itemized bid. Despite thirty-five years of construction experience, however, Whitehurst disclaimed any knowledge regarding what equipment was necessary for the Montevallo job. He denied any knowledge about the equipment involved and stated that he had not seen an equipment list for the job. He testified, however, that a mechanical engineer reviewed and approved the equipment Trane was required to provide to the job and that a general contractor generally receives a submittal list containing the approved equipment. Based on Whitehurst's testimony, it may be reasonable to conclude that Whitehurst, and thus Whitehurst–Lassen, were unfamiliar with the details of Adams & Kilgore's arrangements with their suppliers. Nonetheless, Whitehurst–Lassen cannot hide behind its professed ignorance about the Montevallo job to support an estoppel against Trane particularly when Whitehurst–Lassen knew, or should have known, that a chiller was required to complete the Montevallo job. The Miller Act, and the Alabama Public Works statute, place a sometimes heavy burden of care on general contractors and their sureties. *United States v. Glassman*, 397 F.2d 8, 10 (4th Cir.1968). Whitehurst–Lassen cannot meet their burden through pleas of ignorance about business matters with which they should be familiar.

Finally, much of the confusion in this case arose because Whitehurst–Lassen failed to inform Trane of its decision to terminate Adams & Kilgore. Trane certainly would not have shipped and billed the chiller to Adams & Kilgore had it known Whitehurst–Lassen had terminated Adams & Kilgore—Trane would have instead billed Whitehurst–Lassen or the new subcontractor. It is irrelevant that Trane originally shipped and billed the chiller to Adams & Kilgore without notifying Whitehurst–Lassen because Trane was unaware of Whitehurst–Lassen's termination of Adams & Kilgore. Whitehurst–Lassen cannot use its failure to inform Trane about Adams & Kilgore's termination to support its estoppel claim. Similarly, as the general contractor, Whitehurst–Lassen had a duty to ensure that it paid Adams & Kilgore only what was due to Adams & Kilgore on its termination date. Whitehurst–Lassen failed to make any efforts to contact Trane, a "known supplier," to inform Trane of Adams & Kilgore's termination or to inquire whether any additional balances were due Trane. Whitehurst–Lassen therefore failed to meet the heavy burden of care necessary to establish its estoppel defense. *Glassman*, 397 F.2d at 10.

### E. Unpled Affirmative Defenses

Whitehurst–Lassen and USF & G failed to raise the affirmative defenses of estoppel, novation, waiver, or accord and satisfaction in its answer or the two pretrial orders. Trane argues that it was error for the district court, on its own volition, to raise these unpled defenses during closing arguments and then base its holding on these defenses without providing Trane notice and opportunity to gather and submit evidence in response. Because we hold that the evidence was insufficient to support a waiver, estoppel or novation defense, we need not address whether the district court's actions were erroneous.

### III. Conclusion

Whitehurst–Lassen and USF & G failed to provide sufficient evidence supporting

either a novation, waiver or estoppel defense. The district court therefore erred in entering judgment in their behalf. The district court's order is REVERSED with instructions to enter judgment for Trane in the amount of $15,649.92 plus interest and reasonable attorneys' fees.