UNITED STATES of America, for the Use and Benefit of KRUPP STEEL PRODUCTS, INC., d/b/a Diversified Steel Services, Plaintiff–Appellee, Cross–Appellant,

v.

AETNA INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.

UNITED STATES of America, f/u/b/o KRUPP STEEL PRODUCTS, INC., d/b/a Diversified Steel Services, Plaintiff–Appellee,

v.

AETNA INSURANCE COMPANY, Defendant–Appellant.

UNITED STATES of America, for the Use and Benefit of KRUPP STEEL PRODUCTS, INC., d/b/a Diversified Steel Services, Plaintiff–Appellant,

v.

AETNA INSURANCE COMPANY, Defendant–Appellee.

Nos. 89–3389, 90–3063 and 90–3325.

United States Court of Appeals, Eleventh Circuit.

Feb. 21, 1991.

John J. Agliano, John H. Rains, III, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, Fla., for Aetna Ins. Co.

Robert M. Quinn, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for U.S. for Use and Benefit of Krupp Steel Products, Inc.

Before FAY, ANDERSON and MARKEY[*], Circuit Judges.

FAY, Circuit Judge:

This appeal involves a suit brought under the Miller Act by plaintiff-appellee Krupp Steel Products, Inc. d/b/a Diversified Steel Services ("Diversified"), a supplier of steel. Diversified sued defendant-appellant Aetna Insurance Company ("Aetna") as surety on a public works construction project in Tampa, Florida. At trial, Aetna attempted to raise the affirmative defense of estoppel. The trial court, however, interpreted the jury's responses to interrogatories contained in the Special Verdict form in such a way as to conclude that Aetna had failed to establish the elements of estoppel. The court therefore entered a final judgment for the full amount of Diversified's claim. Because of the extreme confusion surrounding the meaning of the jury's verdict, generated in large part by the district court's attempts on remand to accommodate an earlier discussion of estoppel by a panel of our Circuit, we reluctantly must REVERSE and REMAND this case once again for a new trial on the issue of estoppel.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As mentioned, Diversified is a supplier of steel. Allied Steel Fabrications ("Allied"), a steel fabricator, was a subcontractor for a portion of the construction of the Forest Hills Post Office, a federal public work in Tampa, Florida (the "Forest Hills job"). The general contractor for the Forest Hills job was John D. Grubbs, Inc. ("Grubbs"). As required by the Miller Act, Grubbs, the principal, and Aetna, as surety for the project, executed and delivered a public works payment bond to the Post Office for the protection of all persons supplying labor or materials to the Forest Hills job.

Allied ordered raw steel for the Forest Hills job from Diversified, and Diversified shipped steel to Allied's yard from June to December, 1984.[1] Allied made only one payment of $10,058.39 for Diversified's steel deliveries.

Although it had received only one payment, Diversified's credit manager gave Allied two separate partial releases of lien (or "partial lien waivers") in connection with the payment.[2] The first partial lien waiver was signed on October 26, 1984, and recited nominal consideration of $10.00. The second partial lien waiver, signed November 15, 1984, recited as consideration the amount actually received from Allied—$10,058.39. Both partial lien waivers had "effective dates" of August 31, 1984.

[*] Honorable Howard T. Markey, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Each shipment was accompanied by a delivery ticket, which was signed by Allied's representative upon delivery, and followed by an invoice. Each invoice and delivery ticket indicated that the steel was purchased for the Forest Hills job, and provided for an award of attorney's fees should it be necessary to place the account in the hands of an attorney for collection.

2. At this point, it is helpful to understand the practice of financing transactions for supplied materials. Normally, the general contractor, in this case Grubbs, pays the subcontractor, Allied, who then pays the supplier, Diversified. Grubbs, however, only pays Allied for work performed or materials supplied. Diversified holds security for materials it supplies on a "job basis," the credit arrangement for the Forest Hills Post Office, based on lien rights against the payment bond executed by Aetna, the surety of the project. Diversified then relinquishes its lien bit by bit as it receives payment from Allied. The exchange is formally recorded as a "partial release of lien" or "partial lien waiver," issued by Diversified, and subsequently presented by Allied to Grubbs as proof of delivery by Diversified and payment by Allied. Grubbs correspondingly reimburses Allied for payment to Diversified. *United States f/u/b/o Krupp Steel Products, Inc. v. Aetna Ins. Co.*, 831 F.2d 978, 981 (11th Cir.1987) [hereinafter *Krupp I*].

Diversified sued Aetna as surety for the project under the Miller Act, 40 U.S.C. § 270a, to recover the balance of outstanding payments owed by Allied for steel shipped between September 6, 1984, and December 20, 1984. Diversified demanded judgment in the amount of $36,667.82, plus interest, costs, and a reasonable attorney's fee. In answering Diversified's complaint, Aetna raised several affirmative defenses. Diversified then moved for summary judgment with supporting affidavits. Aetna subsequently moved for leave to file an amended answer for the purpose of adding a sixth affirmative defense.[3] The district court granted Diversified's motion for summary judgment, in the process denying as moot Aetna's motion to file an amended answer. The court awarded Diversified the full sum of $39,667.82, as well as $5,524.00 in attorney's fees.

Appealing the district court's summary judgment in favor of Diversified, Aetna raised three issues. Aetna argued (1) that fact issues existed regarding Diversified's good faith belief that the materials included in its Miller Act claim were actually intended for use in the Forest Hills job; (2) that fact issues existed regarding Aetna's claim of estoppel (the claim embodied in the language of the sixth affirmative defense that Aetna sought to add to its original pleading); and (3) that Diversified was not entitled to an award of attorney's fees.

In *Krupp I,* 831 F.2d at 984, a panel of our Circuit, although affirming the district court's resolution of the good faith issue, reversed the district court's summary judgment in favor of Diversified, and remanded the case. The panel ruled that Aetna had made a showing of "genuine and material unresolved issues of fact" relating to Aetna's estoppel defense, *Id.* at 980, and that

Aetna should be granted leave to amend its answer to include the added affirmative defense prior to trial. *Id.* at 983. The panel also instructed the district court that attorney's fees were not recoverable in this action, since such an award would create an inappropriate exception to the American Rule that each party bear its own litigation costs. *Id.* at 984.

On remand, the case was ultimately tried to a jury. At the beginning of the charge conference, the district court stated its intention to submit the issues framed in the Pretrial Stipulation as tried to the jury for its resolution pursuant to appropriate instructions and a special interrogatory form of verdict. With regard to Aetna's estoppel defense, the court originally proposed the following basic elements of proof: (1) that the plaintiff was negligent in issuing the partial releases of lien to Allied (the subcontractor); (2) that Grubbs, as the general contractor, relied upon the partial releases of lien; and (3) that Grubbs was damaged as a result of its reliance (or would be damaged if it or its surety should now be required to pay the plaintiff's claim). Subsequently, however, the court decided to modify the second element of the estoppel instruction so that the jury would have to find that Grubbs "was misled by and reasonably relied upon *(that is, was not itself negligent in relying upon)* the partial releases of lien." (R3–97) (emphasis supplied).

The addition of the highlighted language was an apparent attempt by the district court to accommodate language in *Krupp I* which seemed to suggest that some balancing of the relative negligence of the parties was necessary to the jury's estoppel determination.[4] In interpreting *Krupp I,* the district court opined that the panel's

---

3. The proposed defense provided:

Plaintiff by its own conduct in executing two partial releases of lien contrary to the custom and practice in the construction industry, caused payments to be made to Plaintiff's subcontractor. Plaintiff as a result of this negligence and failure to avoid consequences of its own acts should be denied recovery on its claim based on the damages proximately caused by Plaintiff's negligence. Defendant Aetna is entitled to a setoff from Plaintiff for the damages caused by Plaintiff's negligence

and failure to avoid consequences of improperly executing an improper additional partial release of lien.

(R1–16).

4. At the charge conference, the district court inquired of counsel:

We have got the Court of Appeal opinion in this very case which establishes the law of the case. And it does seem, although the discussion is not entirely clear in the context of estoppel—there is certainly language in the

discussion of estoppel did not intend "to borrow the tort concept of comparative negligence and apply it in a commercial transaction context" (although the court also acknowledged that it was "something less than clear"): "Rather, it seems to me, they were simply speaking in terms of the concept or defense of estoppel as it might relate to the facts of this case. At least that's the way I interpret it and the way that I intend to try and submit the case to the jury." (R7–12–13). Nevertheless, the court sought to build the negligence terminology of *Krupp I* into its jury estoppel instruction and Special Verdict form so that "if I am wrong in my interpretation of the opinion and the submission of these issues

opinion of Judge Johnson which would suggest that some balancing of the relative negligence of the parties—if in fact the fact-finder should determine that both were negligent, that some balancing would have to be done then perhaps as a matter of law as to which was most negligent. And only if it is determined that in this—in the context of this case the plaintiff, Diversified, was the most negligent could an estoppel apply.

Or, stated the other way around, if the jury should determine that the plaintiff was negligent and that John Grubbs, Inc., was also negligent and indeed more negligent than the plaintiff, then there would be no estoppel.

The reason all of that, frankly, doesn't make a lot of sense to me is because in the law of estoppel itself it seems to me that issue would be subsumed in the determination as to whether Grubbs reasonably relied—that is to say, whether Grubbs was negligent, and, if it was to any extent, then there's no estoppel.

On the other hand, there is some discussion in the opinion about the relative negligence of the parties. How am I to deal with that? (R7–10).

**5.** The court continued:

That is not to say that I intend to instruct the jury concerning relative burdens under the Miller Act, but I think perhaps I might do a better job than I have done in formulating these negligence issues for the jury by further amending the second element of proof required in this case to establish an estoppel is to incorporate the word 'negligent' in that second element so that the jury understands that it is making a judgment, first of all, as to the negligence of the plaintiff, if any, and, secondly, the negligence of John Grubbs, if any, and then perhaps on the verdict form add an additional question as to—if it—if it finds that both parties were negligent, which it determined to be the most negligent. (R7–14–15).

to the jury it might be possible for the Court of Appeals to render, without necessity of a retrial." (R7–14).[5]

After deliberations, the jury returned an initial verdict. There was confusion, however, regarding the jury's responses to the questions set forth in the Special Verdict form.[6] The jury had answered "Yes" to special interrogatory Nos. 1, 2, and 4, did not answer No. 3, and answered ".00" to No. 5. Thus, the verdict apparently reflected the jury's findings that Diversified was negligent, that Grubbs was not negligent at all, and that Grubbs was damaged as a result of reliance upon the negligently issued partial release forms. The district court, however, viewed the jury's failure to

**6.** The Special Verdict form submitted to the jury read as follows:

1. Do you find from a preponderance of the evidence, as claimed by the Defendant, that the Plaintiff was negligent in issuing the two partial releases of lien to Allied Steel Fabricators, Inc. (the subcontractor)?

Answer Yes or No _____

2. Do you find from a preponderance of the evidence, as claimed by the Defendant, that John Grubbs, Inc. (the general contractor) was misled by and reasonably relied upon (that is, was not itself negligent in relying upon) the partial releases of lien issued by the Plaintiff, Diversified, to Allied Steel Fabricators, Inc.?

Answer Yes or No _____

3. If you answered Yes to Question 1 and No to Question 2, thereby finding that both the Plaintiff and John Grubbs, Inc. were negligent, which of the two parties do you find from a preponderance of the evidence to have been the most negligent?

Answer in terms of the percentages so that the total equals 100%
The Plaintiff was _____% negligent.
John Grubbs, Inc. was _____% negligent.

4. If you answered "Yes" to Questions 1 and 2, do you find from a preponderance of the evidence, as claimed by the Defendant, that John Grubbs, Inc. was damaged as a result of its reliance (or would be damaged if it or its surety should now be required to pay the Plaintiff's claim)?

Answer Yes or No _____

5. If you answered "Yes" to Question 4, or if you answered Question 3 finding that the Plaintiff's negligence was greater than the negligence of John Grubbs, Inc., what is the amount of money you find from a preponderance of the evidence to be the amount paid by John Grubbs, Inc. to Allied Steel Fabricators, Inc. in reliance upon its belief that Diversified's partial lien release extended beyond August 31, 1984?

Answer in Dollars and Cents $_____
(R3–96).

quantify the damage to Grubbs in No. 5 as inconsistent with the jury's answer to the previous question on the Special Verdict form finding damage to Grubbs.

Consequently, the district court asked the jury to consider their verdict a bit more,[7] and instructed the jury that it was free to go back to the beginning, if it wished, and re-examine any responses it had given up to that point. The jury then returned its second verdict. This time the answer to interrogatory No. 2 had been changed from "Yes" to "No." In answer to No. 3, the jury had determined that Diversified was 90% negligent, and that Grubbs was 10% negligent. In answer to No. 5, the jury determined that Grubbs had paid Allied $35,700 in reliance upon Diversified's second partial release of lien.

Both Diversified and Aetna disputed the meaning of this second verdict. Given the jury's answers to Nos. 1 and 2, Diversified contended that it should be entitled to the full amount of its claim of $39,667.82 plus interest and costs. Aetna, on the other hand, argued that judgment should be entered in the lesser amount of $3,967.82, i.e. the amount of the claim less the $35,700 found by the jury in its response to No. 5.

In an attempt to apply the appellate panel's reasoning in *Krupp I* to the jury's verdict,[8] the district court concluded that Aetna had failed to establish an estoppel defense, and, correspondingly, that "the Plaintiff is entitled to the judgment it seeks." (*Order Directing Entry of Judgment on Special Verdict* at 4, R4–108).

---

7. The court did so with the following explanation to the jury:

    Now, it seems to me that if you had answered Question Number 4 yes, as you did, that some amount must be given in response to Question Number 5, or, conversely, that is the other way around, if you find that zero is the appropriate answer to Question Number 5, then the answer to Question Number 4 should perhaps be no.
    And I'm going to ask, if you would, please, that you retire once again to further consider your responses to those questions.
    (R8–21).

8. The district court reasoned:

    Resolution of this dispute obviously requires the Court to properly interpret and apply the Court of Appeals opinion to the

The court entered final judgment for Diversified in the amount of $39,667.82, plus prejudgment interest.

Diversified also moved for an award of attorney's fees. The district court denied the motion for failure to comply with Local Rule 4.18, M.D.Fla.Rules, which requires that motions for attorney's fees be filed not later than thirty (30) days following entry of judgment.[9] Diversified moved for reconsideration of its motion, arguing that *Krupp I* had apparently indicated that no fees were to be awarded, and that Diversified's entitlement to a fee award only became apparent when our Circuit rendered its decision in *United States f/u/b/o Southeastern Municipal Supply Co. v. National Union Fire Ins. Co. of Pittsburg*, 876 F.2d 92, 93 (11th Cir.1989) (explicitly repudiating the suggestion in *Krupp I* that a contractual provision between a supplier and a subcontractor for the recovery of attorney's fees is not enforceable under the Miller Act against the general contractor or its surety). Even accepting Diversified's argument, the district court still found its motion for fees to be one day untimely, and denied plaintiff's motion for reconsideration. Diversified appeals both orders, as well as certain alleged errors involving the district court's instructions to the jury.

## DISCUSSION

### 1. *Estoppel.*

In *Krupp I*, a panel of our Circuit reversed a summary judgment in favor of

facts as now resolved by the jury. That task, in turn, raises the question whether the principles of negligence tort law should be applied. Does some form of *comparative* negligence govern the case, or does the issue simply remain, under traditional principles of the law of estoppel, whether the Defendant 'reasonably relied to his detriment' upon the Plaintiff's conduct? If it is the latter and the case simply presents a question of reasonable, detrimental reliance, then *any* negligence (i.e., failure to use reasonable care) on the part of the Defendant prevents its reliance from being reasonable and no estoppel results.
(*Order Directing Entry of Judgment on Special Verdict* at 3, R4–108) (emphasis in original).

9. Final judgment for plaintiff was entered on April 4, 1989, but plaintiff did not file a motion for attorney's fee until July 28, 1989.

Diversified, finding that genuine and material factual issues existed pertaining to the two partial lien waivers issued by Diversified to Allied. The panel also observed that the "subsequent assessment of whether Aetna has a valid claim of estoppel should be undertaken with the remedial intent of the Miller Act in mind." *Krupp I*, 831 F.2d at 984. Such language should have clearly established the law of this case as dealing only with such facts and law as pertain to the affirmative defense of estoppel. Nevertheless, the *Krupp I* opinion apparently engendered considerable confusion among the parties and the district court, since its discussion of the elements of Aetna's estoppel defense contains some admittedly loose references to the parties' relative negligence. We therefore wish to clarify that nothing in the prior opinion should have been read to create or address any affirmative defense other than the traditional one of estoppel.[10]

■ Estoppel is a defense under the Miller Act in proper factual circumstances. *Graybar Elec. Co. v. John A. Volpe Constr. Co.*, 387 F.2d 55, 59 (5th Cir.1967) (citing *Moyer v. United States f/u/o Trane Co.*, 206 F.2d 57 (4th Cir.1953))[11]; *see Trane Co. v. Whitehurst–Lassen Const. Co.*, 881 F.2d 996, 1004 (11th Cir. 1989); *United States v. Forrester*, 441 F.2d 779, 783 (5th Cir.1971). However, "[i]t is likewise the well settled rule in this Circuit that while estoppel may be a proper defense in a Miller Act case, there must first be shown a detriment to the party asserting it." *Forrester*, 441 F.2d at 783 (citing *Graybar*, 387 F.2d at 59); *see also Trane*, 881 F.2d at 1004 (and cases cited) (party claiming estoppel under Miller Act must

show that he "has been misled to his detriment").

■ In Miller Act cases, the affirmative defense of estoppel is obviously grounded in the more general principles embodied in the doctrine of equitable estoppel. *See Moyer*, 206 F.2d at 60. This doctrine "precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's misrepresentation or failure to disclose some material fact." *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir.1984). Estoppel requires the presence of three elements: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Harrison*, 735 F.2d at 413 (citing *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir.1982)).

■ Further, the remedial nature of the Miller Act requires that a general contractor do everything that it reasonably can to protect itself "from possible misapplication of funds with which it parted in order to allow a subcontractor to continue work." *Graybar*, 387 F.2d at 59–60. In other words, the general contractor's detrimental reliance in Miller Act cases must be reasonable.[12]

It is true, as the second element of the estoppel formulation above suggests, and as the *Krupp I* panel observed, that "[a] number of cases have estopped Miller Act claims where responsibility for nonpayment

---

**10.** For example, although Aetna attempts to read *Krupp I* otherwise, *see Initial Brief of Appellant/Cross–Appellee* at 32–35, there is no "set-off" defense, independent from estoppel, that permits a damages setoff according to the comparative negligence of the parties.

**11.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**12.** Once again, this requirement of reasonable reliance, while consistent with the intention of

protecting the "innocent" in Miller Act cases, *Graybar*, 387 F.2d at 59, also follows from the doctrine of equitable estoppel generally. *See Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984) (party claiming estoppel must have relied on adversary's conduct " 'in such a manner as to change his position for the worse,' " and reliance "must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading") (footnotes omitted).

was traced to *supplier negligence* or fraud." 881 F.2d at 983 (emphasis added). This only makes sense, since the central notion of the estoppel defense is that A cannot either intentionally or negligently represent to B that one state of affairs exists, induce B's detrimental reliance on such a state, and then pursue his normal statutory remedy when it becomes apparent that the state of affairs represented is inaccurate or false. Further, any determination of reasonable reliance, in this case by the general contractor, will obviously involve a fault-based evaluation that largely overlaps with one of negligence, since the latter by definition is conduct in which a reasonably prudent person does not engage.

The functional similarity between reasonableness determinations in different areas of the law does NOT mean, however, that tort principles of comparative negligence are to be imported into the estoppel inquiry, or that the jury is to engage in any explicit weighing of the parties' relative negligence in rendering its estoppel determination. As one district court has noted in a different context, the "essence of the Miller Act case is a breached contractual obligation. To allow such a case to turn into a tort case would frustrate the purpose of the Miller Act by complicating the litigation immensely." *United States f/u/b/o Allied Building Products Corp.*, 729 F.Supp. 477, 479 (D.Md.1990).

█ It is apparent from a review of the record that the district court correctly recognized that no new "comparative negligence" concepts were intended to be incorporated into the estoppel determination in *Krupp I.* Nevertheless, because it was not sufficiently certain of the *Krupp I* panel's reasoning, the district court ironically made a valiant attempt to hedge its instructions and Special Verdict interrogatories in such a manner as to avoid a retrial if its interpretation were incorrect. Unfortunately, although we feel that it is quite possible to reconcile the jury's verdict and comparative negligence findings with a finding of estoppel (which would require a reversal in favor of Aetna), our review of the record leads us to conclude that there was simply too much confusion generated by even the appearance of nodding conceptually to the comparative negligence principles of tort law. We reiterate that such principles have no formal place in the traditional estoppel inquiry. Accordingly, we find it necessary to reverse the district court's judgment, and remand the case for retrial on the estoppel issue.

### 2. *Attorney's Fees.*

The *Krupp I* panel stated that its reversal of summary judgment for Diversified "obviate[d] the issue" of attorney's fees at that stage of the proceeding, but offered "a few comments" which might "be relevant for later proceedings." 831 F.2d at 983. The panel then observed that Diversified would not be entitled to an award of attorney's fees. *Id.* at 984 ("With no express agreement between Diversified and Grubbs, nor any express agreement between Allied and Grubbs on behalf of Diversified, it would be inappropriate to create an exception to the American Rule in this case.").

As the district court noted, our Circuit subsequently issued a per curiam opinion, *United States f/u/b/o Southeastern Municipal Supply Co. v. National Union Fire Ins. Co.*, 876 F.2d 92, 93 (11th Cir. 1989), explicitly repudiating the suggestion in *Krupp I* that a contractual provision between a supplier and a subcontractor for the recovery of attorney's fees is not enforceable under the Miller Act against the general contractor or its surety. In this regard, the panel in *Southeastern Municipal Supply Co.* (including two members of the *Krupp I* panel) followed *United States f/u/b/o Carter Equipment Co. v. H.R. Morgan, Inc.*, 554 F.2d 164 (5th Cir.1977), and dismissed the language in *Krupp I* as "merely dictum" and erroneous. 876 F.2d at 93.

The district court nevertheless denied Diversified an award of attorney's fees under Local Rule 4.18, M.D.Fla.Rules (effective March 15, 1989): "Even accepting Plaintiff's argument that the thirty day period for filing its motion for attorney's fees should be deemed to commence upon the date that *Southeastern Municipal Supply*

*Co.* was decided, the motion was still untimely having been filed thirty-one days after the case was decided." (R4–133). In light of our decision to remand the case for retrial on the estoppel issue, we need not consider whether the district court correctly applied Local Rule 4.18.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED for retrial on the issue of estoppel.