CLARK, Circuit Judge:
 

 The appellant (GATX) appeals from a district court order upholding a bankruptcy court denial of GATX’s application for payment of an administrative claim. This case arises out of the sale of a DC-8 aircraft from GATX to the debtor, Airlift International, Inc. (Airlift). The aircraft, which was sold with installed and spare engines, was purchased for $11,596,973.00 of which $9,220,000.00 was to be paid in 120 monthly installments of $130,951.16 consisting of principal and interest, as evidenced by a promissory note which was secured by a duly perfected aircraft chattel mortgage. In early 1981 Airlift defaulted on its payment obligations under the note. On June 4, 1981, Airlift filed a petition for relief under Chapter 11 of Title 11 of the United States Code, in the United States Bankruptcy Court for the Southern District of Florida.
 

 After commencement of the case and prior to the appointment of Chapter 11 co-trustees, GATX and the debtor entered into a court approved stipulation pursuant to 11 U.S.C. § 1110 which obligated the debtor to pay the monthly installments coming due under the note and chattel mortgage in order to maintain possession of the aircraft.
 
 [1]
 
 Payments were made as
 
 *1507
 
 due on August 26, September 26 and October 26, 1981. The co-trustees were appointed on November 9, 1981 and subsequently failed to make the payment due on November 26, 1981. The aircraft was surrendered to GATX on December 7, 1981. GATX requested payment of $178,966.59 as an administrative obligation of the estate trustee. This sum represented the installment due on November 26, 1981, plus the prorated portion of the next installment due for the period of November 26 to December 7, 1981.
 

 The bankruptcy court awarded GATX $8,597.48 as the reasonable value for the actual use of the aircraft. The court rejected GATX’s full claim for the prorated installment payment on two grounds. First, the court found that GATX’s claim under 11 U.S.C. § 507(b) for a priority administrative expense failed because GATX did not offer evidence that it was not adequately protected, such as evidence that the value of the collateral decreased after the stipulation was executed and was insufficient to satisfy the claim. Second, because GATX as a chattel mortgagee held a mortgage which instrument was executed for the purpose of securing the payment of money. The court found that only in the instance where GATX was an equipment lessor would an obligation for the use and possession of the property arise. While these conclusions are correct as general principles of bankruptcy law, they fail to correctly interpret the congressional intent behind 11 U.S.C. § 1110.
 
 [2]
 

 Section 1110, and its companion statute section 1168 which covers railroad rolling stock, represent amended versions of sections 77(j), 116(5) and 116(6) of the prior Bankruptcy Act. These sections generally provided that equipment financers could repossess their collateral upon default despite the filing of a bankruptcy petition if both non-bankruptcy law and the underlying loan agreement permitted repossession. The purpose of those sections was to enhance the borrowing ability of airlines, maritime shippers, and railroads by offering equipment financers greater certainty with regard to their ability to protect collateral in a bankruptcy proceeding. H.R.Rep. No. 595, 95th Cong., 1st Sess. 238-39 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.
 
 See
 
 5 L.King,
 
 Collier on Bankruptcy,
 
 ¶ 1110.01 (15th ed. 1979). However, these protections extended only to equipment held under leases and conditional sales contracts. The theory behind these former protections was that “under leases and conditional sales, title of the property does not pass to the debtor, but remains in the financer. Thus, it is appropriate to exclude what is not property of the estate from the automatic stay in a reorganization case.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 240 (1977), U.S.Code Cong. & Admin.News 1978, p. 6199. The House Report goes on to state that changes in financing practices made it necessary to protect different types of security interests in equipment and that under new section 1110 such interests would be protected “to make financing forms more flexible and more consonant with modern law.”
 
 Id.
 

 
 *1508
 
 The parties to this suit have very disparate views of the intent of Congress when enacting section 1110 and the extent of liability of the debtor upon entering into a section 1110 stipulation. The specific issue before this court is to determine the nature and effect of a section 1110 stipulation under the Bankruptcy Code. Clearly, a section 1110 stipulation constitutes a post-petition agreement between the parties entered into for purposes of preserving the estate. While the section 1110 stipulation in this case bears resemblance to a section 365 assumption of an executory contract, the legislative history of section 1110 counsels that they are not identical:
 

 It should additionally be noted that under section 1110(a) the trustee or debtor in possession is not required to assume the executory contract or unexpired lease under section 1110; rather, if the trustee or debtor in possession complies with the requirement of section 1110(a), the trustee or debtor in possession is entitled to retain the aircraft or vessels subject to the normal requirements of section 365.
 

 124 Cong.Rec. H11102-03 (daily ed. Sept. 28, 1978).
 
 [3]
 

 Therefore, while the debtor upon entering into a section 1110 stipulation does not assume and is not ultimately liable for performance of the entire contract, it is clear that where the debtor agrees to pay each installment coming due under the note he is subject to the normal requirements of section 365.
 

 The challenge is to discern in the context of a section 1110 stipulation, what constitutes the normal requirements of section 365. In the typical Chapter 11 case the trustee must assume or reject an exec-utory contract or unexpired lease before confirmation of a plan, although the court, pursuant to a request of any party to such contract or lease, may set a specified time period in which the trustee must assume or reject. Section 365(d)(2).
 

 Where the debtor is a lessee, the estate is liable for the reasonable value of the use and occupancy of the property during the period between filing and assumption or rejection of the unexpired lease.
 
 See In re Rhymes, Inc.,
 
 14 B.R. 807, 808 (Bkrtcy.D.Conn.1981); 2
 
 Collier on Bankruptcy,
 
 11 365.03[2] (15th ed. 1979). While “[t]he rent reserved in the lease is presumptively a fair rental ...,” the court may authorize a different figure based upon evidence of the actual use by the debtor.
 
 See In re Peninsula Gunite, Inc.,
 
 24 B.R. 593, 595 (Bkrtcy. 9th Cir.1982).
 

 Upon assuming an executory contract or unexpired lease under section 365 the estate must (i) cure all defaults, (ii) compensate the other party for any pecuniary losses arising from such default, and (iii) provide adequate assurance of future performance under the agreement. 11 U.S.C. § 365(b)(1). Moreover, the estate becomes liable for performance of the entire contract, as if bankruptcy had never intervened.
 
 See Vilas & Sommer, Inc. v. Mahony (In re Steelship Corp.)
 
 576 F.2d 128, 132 (8th Cir.1978);
 
 Collier, supra
 
 at II 365.01[1]. This rule as to liability has been held to apply to executory contracts initially entered into during reorganization, although such contracts do not fall within the literal terms of Section 365.
 
 See In re Chugiak Boat Works, Inc.,
 
 18 B.R. 292, 296-97 (Bkrtcy.D.Alaska 1982).
 

 ADMINISTRATIVE EXPENSES
 

 Our review indicates there are three general situations involving executory contracts or unexpired leases where the effect of a breach by the debtor or trustee must be considered: (1) where the trustee elects not to assume an ongoing executory con
 
 *1509
 
 tract or unexpired lease and rejects it, (2) where the trustee assumes an ongoing ex-ecutory contract or unexpired lease prior to confirmation of the plan, and (3) where the trustee during reorganization proceedings enters into a new executory contract.
 

 In the first instance where the contract is not assumed prior to confirmation, the breach of the executory contract or unexpired lease is deemed to have occurred pre-petition, giving rise to a pre-petition claim under section 502(g),
 
 [4]
 
 but not an administrative expense under section 503(b).
 

 In the latter two instances a breach is deemed to have occurred post-petition giving rise to an administrative expense claim under section 503(b).
 
 [5]
 
 The policy behind treating claims arising from post-petition breaches as administrative expenses is clear. The debtor in possession or trustee by assuming or entering into the contract makes a determination that the contract is in the best interest of the estate and its creditors. This rationale is equally applicable to a section 1110 case where the debtor or trustee has sixty days to contemplate the wisdom of meeting the terms of section 1110. This sixty day period gives the debtor or trustee the opportunity to reassess his situation in light of bankruptcy and to choose whether to enter into a section 1110 agreement as if he were entering into a new contract. Moreover, sections 365 and 1110 both require court approval of post-petition agreements to continue pre-petition obligations.
 

 Thus, the factors considered by a debtor or trustee in deciding whether to continue a contract are essentially the same under sections 365 and 1110. For instance, under both sections past defaults must be cured and the debtor or trustee must agree to perform future obligations. The key difference, as previously discussed, is that under section 365 upon assuming a contract or lease the debtor or trustee is liable for
 
 all
 
 future obligations under the contract, while under section 1110 the trustee agrees “to perform all obligations of the debtor that became due ... under such security agreement, lease, or conditional sale contract, as the case may be .... ” 11 U.S.C. § 1110(a)(1). ■
 

 While the legislative history clearly indicates that the debtor is not required to assume the executory contract or unexpired lease under section 1110, it is equally clear that a section 1110 agreement amounts to a post-petition agreement under which the trustee agrees to meet the obligations coming due under the existing ex-ecutory contract or unexpired lease.
 
 See
 
 
 *1510
 
 124 Cong.Rec. H11102-03 (daily ed. Sept. 28, 1978). Having reviewed section 365 it is obvious to this court that one of the normal requirements under that section, for purposes of section 1110, is to treat the trustee’s breach of a section 1110 stipulation as a post-petition breach giving rise to a section 503(b) claim for administrative expenses.
 
 [6]
 

 See In re Ridgewood Sacremento, Inc.,
 
 20 B.R. 443, 445-46 (Bkrtcy.E.D.Cal.1982);
 
 Collier, supra
 
 at 11365.08[1].
 

 In light of the facts before us we conclude that the installments due under the section 1110 agreement constituted administrative expenses of the estate. At the section 1110 hearing counsel for Airlift unequivocably stated that the aircraft was an actual, necessary expense of preserving the estate. Airlift absolutely required the use of the GATX aircraft in order to continue performance of its military contracts which generated approximately $100,000.00 per round trip.
 
 [7]
 
 As stated by counsel for Airlift:
 

 We cannot function without the aircraft. We have engaged in hours and weeks of study of various types of schedules both before and after we filed on June 4. This company cannot mount a viable operation without at least one DC-8-63 aircraft. This is the only one we have. There is none other available to us on any terms that we can live with. We explored that matter thoroughly long before today. We have already lost two DC-8-63’s because the owners of those aircraft made a different decision than GATX did. (R.Vol. 3, T. 70).
 

 GATX too, could have gone the route of Airlift’s other mortgagee’s and repossessed the aircraft leaving Airlift “dead in the water.” But GATX instead chose to enter a post-petition agreement with Airlift as embodied in the section 1110 stipulation. This agreement was an actual necessary cost of the estate and materially benefited Airlift. Airlift cannot now walk away from the terms and obligations of that post-petition agreement leaving GATX in an inferior position than it would have been if it had exercised its right to repossession in the first place. For instance, had the trustee obtained a similar plane from a new post-petition party, upon default, the bankruptcy court pursuant to section 503(b) would have awarded an administrative expense for the full lease amount due for the period of possession. (See note 5, supra, and accompanying text). Equity demands that GATX not suffer a penalty for having voluntarily entered into a post-petition section 1110 agreement with Airlift. Mortgagees in GATX’s shoes cannot be expected to forego their right of repossession unless they are guaranteed payment by the terms of the agreement during the time the aircraft remains in the possession of the debt- or.
 

 Because the trustee did not assume the entire executory contract, the administrative claim extends only to the unperformed obligations of the trustee for the period the equipment was in the trus
 
 *1511
 
 tee’s possession. The amount of the administrative claim is determined by looking to the amount due under the agreement. In this regard, we find that the bankruptcy court’s award of $8,597.48 based upon the actual use value was error, and that the court should have awarded GATX $178,-966.59, the full prorated amount due GATX under the section 1110 agreement.
 

 Airlift contends that at the hearing concerning approval of the proposed stipulations the attorney for GATX, Mr. Baena, assured the court that GATX would not contend that a “deficiency” under the stipulation constituted an administrative expense. Our review of the record on this point indicates beyond a doubt that the reference to an administrative claim by Mr. Baena only concerned any deficiency that might exist on the
 
 entire
 
 note after GATX had repossessed and sold the aircraft.
 
 [8]
 
 Indeed, the question of the availability of an administrative claim for monthly payments due under the section 1110 agreement was never addressed by either party at the hearing.
 
 [9]
 

 Furthermore, we reject the trustee’s assertion that the section 1110 stipulation did not obligate the estate to make installment payments-in all events, but only in order to retain possession of the aircraft. Under the trustee’s interpretation, the sole remedy of a creditor upon default would be repossession of the aircraft. This argument overlooks the fact that section 1110 gives the equipment mortgagee the right to possession within sixty days of the Chapter 11 filing unless the debtor <)r trustee cures defaults and agrees to perform future obligations. Thus, but for the section 1110 stipulation, GATX would have been entitled to the aircraft. Moreover, section 1110 modified the prior law which gave the fi-nancer an absolute right to retake possession of aircraft equipment regardless of the pendency of reorganization proceedings.
 
 [10]
 
 It hardly makes sense that Congress would intend that a creditor’s sole
 
 *1512
 
 remedy upon breach of a section 1110 agreement would be repossession; an absolute right that the creditor had under prior law, and a right he retains under existing law unless the debtor or trustee agrees to perform current obligations under the financing agreement. The language of the statute and of the section 1110 agreement in this case are clear; the debtor or trustee agrees to make payments under the agreement as they come due. Although the creditor has the right to repossession if any default under the section 1110 agreement is not cured within 30 days, nothing in the statute or legislative history suggests that obligations due under the section 1110 agreement are to be waived upon repossession. If the debtor wishes to stop the payment meter, he must return the aircraft; until that event occurs, the debtor is obligated to make payments as specified by the section 1110 agreement.
 

 The bankruptcy court below appeared to concede that the creditor was entitled to some form of administrative expense given the trustee’s post-petition use of the collateral. In awarding $8,597.48 as the reasonable value for the actual use of the aircraft the court appeared to put the creditor in the shoes of a lessor. For the concept of actual use value most often appears in the context where the debtor or trustee is in possession of property during the period between filing and assumption or rejection of a lease.
 
 See In re Rhymes, Inc., supra
 
 at 808;
 
 Collier, supra
 
 at ¶ 365.03[2], The case before us does not fall within this category. Though the debt- or did not assume the entire mortgage agreement, he did enter into a post-petition agreement to continue to pay installments under the note as they came due for the period during which he retained possession. It is well-settled that when the debtor or trustee enters into a post-petition agreement he is bound by the terms of such agreement, and if he receives the benefits he must adopt the burdens.
 
 See Vilas & Sommer, Inc. v. Mahony, (In re Steelship Corp.)
 
 576 F.2d 128, 132 (8th Cir.1978);
 
 In re Italian Cook Oil Corp.,
 
 190 F.2d 994, 997 (3d Cir.1951). In determining the amount of administrative expense the creditor is entitled to under section 503(b), the terms of the section 1110 agreement control.
 

 The bankruptcy court found that the creditor’s claim under section 507(b), which gives priority over other administrative claims to the extent that adequate protection provided by the debtor proves to be inadequate, failed because GATX failed to introduce any evidence that it was not adequately protected. In our opinion, section 507(b) does not apply in this situation. Section 507(b) refers to the situation where the trustee has provided adequate protection pursuant to sections 362, 363, or 364. Though adequate protection is provided here, Congress has separately determined what constitutes adequate protection for purposes of section 1110.
 

 Congress recognized that creditors in surrendering their right to immediate repossession under the prior law required some measure of protection to continue performing under the security agreement. The House Report states:
 

 The protection afforded the financer is similar to that contained in other sections of the bill governing use of collateral by the estate and the treatment of exec-utory contracts and unexpired leases. Under those sections, a secured creditor is entitled to adequate protection if the trustee elects to keep and use his collateral. A lessor is entitled to lease payments under the terms of the lease, and to the curing of past defaults, if the trustee elects to assume a lease. The major differences for transportation equipment security interests is that the proposed section
 
 defines more precisely what constitutes adequate protection. It is the payments and duties of the debtor called for under the security agreement.
 
 In the case of a lease, the protection is the same afforded other lessors, but the trustee is required to make a decision within 60 days of the order for relief. This should not impose an undue burden on the trustee, because transpor
 
 *1513
 
 tation equipment m any transportation company reorganization is one of the most important assets. A decision must be made quickly if the business is to be kept operating and be rehabilitated. The quick decision requirement applies equally to security agreements and conditional sale contracts, thus providing some additional measure of protection for equipment financer.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 239-40 (1977), U.S.Code Cong.
 
 &
 
 Admin. News 1978, p. 6199 (footnotes omitted) (emphasis added).
 

 Finally, in light of the above legislative pronouncement, the bankruptcy court’s discussion differentiating between leases and mortgages misses the mark. The court found that only a lease agreement gives rise to an obligation for the use and possession of property and that no such obligation arises under a mortgage because the mortgage itself secures the payment of money.
 

 This approach fails to recognize the unique nature of a section 1110 agreement. Under section 1110 the debtor “agrees to perform all obligations ... that become due on or after such date under such security agreement, lease, or conditional sale contract, as the case may be_” Pursuant to section 1110 Airlift in this case agreed “to pay each installment hereafter coming due under the Note in the time and manner therein prescribed commencing on the 26th day of August, 1981, and to perform all other obligations that hereafter come due under the Aircraft Chattel Mortgage and Note ....” Though the Note set the parameters of Airlift’s obligation, .it is the section 1110 agreement that creates the binding contractual obligations of Airlift. Any other interpretation would require Airlift to assume the entire obligation represented by the Note, a result clearly prohibited by the legislative history.
 

 Thus, a section 1110 agreement puts the debtor in the position of having made a post-petition agreement to carry on a pre-petition executory contract without assuming the full burdens of that contract under section 365. Because of the unique obligations imposed by a section 1110 agreement, the ordinary distinctions between leases and mortgages under bankruptcy do not apply. Rather, because neither a lease or mortgage is fully assumed under section 1110 the obligations of the debtor to make payments is embodied in the section 1110 agreement itself-
 

 This distinction has important consequences. For instance, if Airlift had been required to assume the entire contract under section 365, upon default GATX would have an administrative expense claim for any deficiency on the
 
 entire
 
 note after it repossessed and sold the aircraft. But upon default under section 1110, if GATX suffers a deficiency on the entire note after repossession and sale, its claim for that deficiency is treated as a pre-petition claim, forcing GATX to stand in line with the other secured creditors. In recognition of this risk Congress defined the adequate protection necessary to be the guarantee of installment payments due under the note or lease for as long as the debtor retains possession of the aircraft.
 

 The legislative history quoted above clearly indicates that GATX was entitled to the additional adequate protection of payments due under the agreement in return for foregoing its right to repossession. As further support for this interpretation we note that the House chose to treat leases and mortgages equally under section 1110: “The effect of this section will be the same if the debtor has granted the security interest to the financer or if the debtor is leasing equipment from a financer that has leveraged the lease and leased the equipment subject to a security interest of a third party.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 405 (1977), U.S.Code Cong. & Admin.News 1978, p. 6361.
 

 Accordingly, we reverse and direct that the court on remand award GATX $178,-966.59 as an administrative expense entitled to priority under section 507(a)(1).
 

 REVERSED.
 

 [1]
 

 . The stipulation dated August 11, 1981, provided in relevant part:
 

 Debtor has declared that the Aircraft is essential to any plan or reorganization it may propound herein and thus, the uninterrupted use of such Aircraft and the Engines must be ensured, and;
 

 Whereas, GATX would otherwise be entitled to possession of the Aircraft and Engines on August 5, 1981, pursuant to Section 1110, Title 11, United States Code.
 

 In accordance with Subsection (a)(1) of Section 1110, Title 11, United States Code, Debtor agrees, subject to the Court’s approval, to pay each installment hereafter coming due under the Note in the time and manner therein prescribed commencing on the 26th day of August, 1981, and to perform all other obligations that hereafter become due under the Aircraft Chattel Mortgage and Note....
 

 Nothing contained herein shall be construed as a waiver of any rights or remedies available or becoming available to GATX as a matter of law; provided however, that so long as Debtor makes all payments when due under the Note ... GATX will permit Debtor to remain in possession of the Aircraft and the Engines and will not exercise its rights under said Section 1110 of Title 11.
 

 [2]
 

 . Section 1110 of the Bankruptcy Code, 11 U.S.C. § 1110, provides in relevant part:
 

 The right [of the creditor] ... to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement, lease, or conditional sale contract, as the case may be, is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—
 

 (1) before 60 days after the date of the order for relief under this chapter, the trustee, subject to the court’s approval, agrees to perform all obligations of the debtor that become due on or after such date under such security agreement, lease, or conditional sale contract, as the case may be; and
 

 (2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement, lease, or conditional sale contract, as the case may be—
 

 (A) that occurred before such date is cured before the expiration of such 60-day period; and
 

 (B) that occurs after such date is cured before the later of—
 

 (i) 30 days after the date of such default; and
 

 (ii) the expiration of such 60-day period.
 

 [3]
 

 . The bankruptcy court in citing to this same legislative history stated: “If the debtor does cure defaults and agrees to perform, that performance and agreement is not the assumption of an executory contract or lease, which remains subject to the requirements of 11 U.S.C. § 365." This interpretation implies that a Section 1110 agreement is not subject to the normal requirements of Section 365, which contradicts the clear meaning of the legislative history. Moreover, as discussed below, the bankruptcy court failed to recognize the unique nature of a section 1110 agreement under the Bankruptcy Code.
 

 [4]
 

 . Section 502(g) reads:
 

 (g) A claim arising from the rejection, under section 365 of this title or under a plan under Chapter 9, 11 or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.
 

 [5]
 

 . While the breach of an executory contract or unexpired lease assumed under section 365 clearly results in an administrative expense claim, contracts initially entered into during reorganization, in order to qualify under section 503(b), must involve an actual necessary cost or expense of preserving the estate. As noted by the court in
 
 In re Chugiak,
 
 18 B.R. 292 (Bkrtcy.D.Alaska 1982):
 

 The reason why Congress chose not to include newly entered (and thus un-assumed) contracts within the literal scope of § 365(g), and thus in effect returned the law to its pre-1967 state, also seems evident. By requiring the court to determine the reasonable necessity of the newly entered contract under § 503(b), Congress has insured some judicial control over the determination of what exec-utory contracts will be granted administrative expense priority. The Code, in order to streamline reorganization procedure, allows a debtor in possession to enter into contracts in the ordinary course of business without seeking court approval. Thus, contracts initially entered into during reorganization, unlike contracts assumed during reorganization, will not have undergone court scrutiny. By limiting automatic administrative expense treatment under § 365(g) to assumed contracts, and by requiring initially entered contracts to qualify under § 503(b) in order to be granted an administrative expense priority, Congress has insured both similar treatment and similar procedural safeguards for these fundamentally similar obligations.
 

 Id.
 
 at 297-98 (footnotes omitted).
 

 [6]
 

 .
 
 Collier’s
 
 discussion of 11 U.S.C. § 1168, a section parallel to Section 1110 which covers railroad rolling stock in railroad reorganization cases, reaches the same conclusion:
 

 An interesting question arises as to the status of any claims based on a default in payment to the secured party after the trustee has agreed to perform the debtor’s obligation but before the financing arrangement is assumed. Is the claim for the defaulted payment an administrative expense? Although the trustee had not yet assumed the financing arrangement, the trustee did agree to make the payments and the obligation was incurred by the trustee in the course of operating the debtor's business. The better view is that claim for the missed payment resulting from actual use of the collateral is an administrative expense, but that claims for payments due only as the result of acceleration by reason of a breach of contract are general unsecured claims.
 

 Collier supra
 
 at ¶ 1168.01.
 

 [7]
 

 . Mr. Finazzo, President of Airlift testified:
 

 [T]he next flight [is] to be made within 48 hours. There is no way we could ever get another aircraft to replace that one, and I am seriously concerned that if we don’t fly that trip and the following one next week, we could very well not only lose September, but we stand in jeopardy of losing next year’s military contract. They have made that clear today, the military have made that clear to us. (R.Vol. 3, T. 23)
 

 [8]
 

 . Mr. Schatzman (Atty. for Creditor’s Committee): [There is a question] that in the event that there was a default that this could be construed for any deficiency after GATX sold their collateral to be an administrative claim which would be significant in wiping out any opportunity to recover. (R.Vol. 3, T. 52).
 

 The Court: What is your position on that, Mr. Baena?
 

 Mr. Baena: I wish I was that clever, your hon- or. We do not, by this document, claim any administrative priority for the—
 

 The Court: For the record today, you waive any deficiency?
 

 Mr. Baena: Waive a deficiency? No, I don’t waive a deficiency, your Honor.
 

 The Court: As it applies to administrative expenses?
 

 Mr. Baena: Yes, sir.
 

 (R.Vol. 3, T. 52-53)
 

 [9]
 

 . As part of the section 1110 stipulation, two engines on the aircraft were to be exchanged for replacement engines. The stipulation provided that if such exchange was performed by GATX the cost to GATX would be a first priority administrative expense. Airlift argues that by identifying only these costs as administrative expenses the stipulation negates by inference any argument that missed payments due under the stipulation should be treated as administrative expenses. We find that the clear language of the stipulation requiring Airlift to pay each installment as due precludes any such inference, moreover, it was necessary for GATX to specifically identify and set out the priority of these costs because they were not covered by the monthly installments due under the agreement.
 

 [10]
 

 . The house in discussing the proposal to replace section 116(5) of the former Bankruptcy Act with section 1110 of the Bankruptcy Code had the following to say:
 

 The bill provides an alternative to these sections of current law, which are harsh in their application. The proposal accommodates the joint interests of the equipment fi-nancers and of the integrity of the bankruptcy laws and the reorganization process.
 

 The proposed sections do not give a financer an absolute right to retake possession of the equipment involved, as under current law. Instead, they provide that the trustee may agree to perform the obligations of the debtor under a security agreement, conditional sale contract, or lease of equipment, within 60 days after the date of the order for relief. In addition, all prior defaults must be cured, and any defaults that occur after the agreement to perform is made must be cured within 30 days after they occur. If these conditions are met, the financer may not retake possession of the equipment. Otherwise, his right to retake is unaffected.
 

 H.R.Rep. No. 595, 95th Cong. 1st Sess. 239 (1977), U.S.Code Cong. & Admin.News 1978, p. 6198 (footnotes omitted).