46 F.3d 1140
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
EVERGREEN INTERNATIONAL AIRLINES, INC., Plaintiff-Appellee,
v.
PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellant.
 No. 93-35303.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1994.
Decided Feb. 2, 1995.
 
 Before: FLETCHER, D.W. NELSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Pan American World Airways, Inc., ("Pan Am") petitions for review of the district court's dismissal on summary judgment of Pan Am's counterclaims against Evergreen International Airlines, Inc., and Evergreen Ventures, Inc., ("Evergreen") arising out of a lease agreement that was terminated because of non-payment by Pan Am and Pan Am's bankruptcy. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 BACKGROUND
 
 3
 Evergreen leased seven Boeing 747 planes and 28 engines to Pan Am between 1988 and 1990. Pan Am filed for reorganization under Sec. 301 of Chapter 11 of the Bankruptcy Code on January 8, 1991, in the Southern District of New York, but continued to operate as an airline.
 
 
 4
 After Pan Am failed to make the $260,000 monthly rental payments due for each of two airplanes, Evergreen filed two actions, one in bankruptcy court, one in district court. In the first, the bankruptcy court ruled that the planes and engines were exempt, under Sec. 1110 of the Bankruptcy Code, from the automatic stay covering Pan Am's assets, and that Evergreen could therefore undertake legal action to repossess them. Pan Am appealed the court's order as it related to five of the planes. Its appeal was unsuccessful.[1]
 
 
 5
 In the second, an action for replevin to regain possession of the two planes not subject to the appeal, the U.S. District Court for the District of Oregon issued a temporary restraining order on March 22, 1991, directing Pan Am to ground one of the planes at Pan Am's headquarters at JFK airport and to fly the other from Honolulu to JFK. This conformed to terms of the leases.[2] The court also ordered Pan Am to place in escrow funds in an amount of $3,000 times the number of hours that Pan Am planned to operate the planes between 5 p.m. on March 22 and midnight on March 24. On March 26, the court found that Pan Am had violated the order by removing all eight of the engines from the two planes after grounding them at JFK, and it ordered Pan Am to reinstall the engines.
 
 
 6
 On April 5, Evergreen amended its replevin complaint to seek possession of all seven planes, claiming that Pan Am had failed to make monthly lease payments ranging from $412,500 to $768,000. On April 12, the court issued a preliminary injunction ordering Pan Am to surrender immediately all of the planes at their current locations, at JFK and in Wichita, Kansas.
 
 
 7
 Because four of the planes contained engines not belonging to Evergreen, the court gave Pan Am six days either to reinstall Evergreen engines in them, or to deliver the planes and Evergreen engines to Evergreen at JFK so that Evergreen could perform the installations. The court ordered Pan Am to deposit funds in the escrow account to cover any further operation of the five additional planes and their engines. Finally, the court stated that Evergreen would not be required to post bond.
 
 
 8
 Three days later, the court found that Pan Am had violated the order to surrender two of the planes. On May 10, after all of the engines and planes had been delivered to Evergreen and $860,000 had been placed in the escrow account,[3] the court denied Pan Am's motion to vacate the injunctions. At a hearing on the motion, Pan Am claimed that the injunctions were void because the court had failed to require Evergreen to post bond. On May 13, the court denied Pan Am's motions but ordered Evergreen to post a nominal bond of $100.
 
 
 9
 Pan Am then filed an answer to the amended replevin complaint, along with counterclaims sounding in tort for wrongfully obtaining possession (which Pan Am labels "abuse of process" on appeal), conversion, and violation of an automatic stay. In its answer, Pan Am asserted that Evergreen had violated the terms of the automatic stay and Sec. 1110 by seeking relief beyond mere repossession of its equipment, and that, under Oregon law, the court should have required Evergreen to post a bond. It sought a declaration that the injunctions were void, as well as an award of damages under Sec. 362(h), which provides mandatory damages for willful violation of an automatic stay. The tort claims accused Evergreen of conversion for repossessing its equipment under a void injunction, and of abuse of process for repossession without posting bond.
 
 
 10
 Pan Am filed an interlocutory appeal of the court's denial of its motion to vacate the injunctions. In the meantime, Pan Am and Evergreen had reached an $8.3 million settlement of Evergreen's administrative claim in the bankruptcy proceeding in New York, covering rent due on the planes. The settlement included a provision for Evergreen to receive all of the funds in the escrow account as partial payment of its administrative claim.
 
 
 11
 Another panel of this Court dismissed as moot Pan Am's appeal of the denial of its motion to vacate the injunction because the equipment and escrow funds had been turned over to Evergreen. The court declined to address the merits of Pan Am's counterclaims. Evergreen International Airlines, Inc., et al. v. Pan American World Airways, Inc., No. 91-35645 (9th Cir. Oct. 21, 1992). On February 26, 1993, the district court granted Evergreen summary judgment on Pan Am's counterclaims. Pan Am appeals this ruling. We have substantial doubt that Pan Am has an interest in the claims that it asserts. However, in order to put this litigation at final rest, we address Pan Am's claims on the merits.
 
 DISCUSSION
 
 12
 Although the validity of the district court's injunctions is no longer directly at issue in this appeal, Pan Am's counterclaims are premised on its contention that the injunctions are void.[4] Pan Am argues that the court had no jurisdiction to order Pan Am to ground the planes at JFK, reinstall the Evergreen engines, and escrow funds, because these orders exceeded the terms of Sec. 1110 of the Bankruptcy Code. Section 1110 exempts leased aviation equipment from 11 U.S.C. Sec. 362, which imposes an automatic stay of any action by a creditor to repossess property from the bankrupt estate.
 
 
 13
 A grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir.1992). We determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. FDIC v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), rev'd on other grounds, 114 S.Ct. 2048 (1994). The existence and extent of subject matter jurisdiction is a question of law that is reviewed de novo. Reebok, Int'l v. Marnatech Enterprises, Inc., 970 F.2d 552 (9th Cir.1992). Factual findings on jurisdictional issues must be accepted unless clearly erroneous. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir.1989).
 
 
 14
 There is no dispute that Evergreen had authority under Sec. 1110 to undertake action to repossess its equipment. However, Pan Am argues that the court had authority only to require that Pan Am disclose the location of and provide Evergreen with access to the planes. Pan Am characterizes the escrow payments as either (1) an administrative claim for continued use of the planes, which only a bankruptcy court could determine, or (2) a civil contempt fine imposed without consideration of the burden on Pan Am. Pan Am argues that these alleged errors render the court's orders void.
 
 
 15
 Section 1110 does not address the question of remedies. However, Congress enacted the statute out of concern that companies without its protection would be reluctant to lease equipment to airlines. 5 Collier on Bankruptcy p 1110.01 at 11106-6.1. The exemption becomes meaningless if repossession cannot be enforced. We agree that any remedies imposed in such a repossession action that go beyond mere return of property hurt the bankrupt estate, to the detriment of other creditors. However, neither the bankrupt estate nor any of Pan Am's creditors is a party to this lawsuit. Pan Am has not demonstrated its own, independent interest in the assets of the estate. Furthermore, the release of the escrowed funds to Evergreen was in partial satisfaction of Evergreen's administrative claims. Thus it is doubtful that there has been any prejudice to the estate in any event.
 
 
 16
 The only authority that Pan Am cites is Collier on Bankruptcy, which states:
 
 
 17
 Section 1110 permits the financier of equipment to recover the equipment under the terms of the financing agreement. Section 1110 does not require, however, the trustee or debtor to deliver the equipment to the financer. While delivery may not be required, the court may order the trustee or debtor to give the financer access to all available information concerning the location of equipment and to provide reasonable assistance in connection with the recovery of such equipment. Costs associated with the recovery should be paid by the financer but payment by the financer of such costs may give rise to a claim against the debtor's estate under the terms of the financing agreements.
 
 
 18
 5 Collier on Bankruptcy p 1110.1 at 1110-27.
 
 
 19
 Technically, the court did not require Pan Am to deliver the equipment to Evergreen, but instead it ordered Pan Am to ground the equipment at Pan Am's headquarters. With the exception of the escrow payments, the court's injunctions were consistent with Pan Am's lease, which required Pan Am to return Evergreen's equipment to any location specified by Evergreen in the event of Pan Am's bankruptcy. Pan Am has not argued that it was not bound by the terms of the lease.
 
 
 20
 Pan Am's assertion that it was required to swap engines is incorrect. The court ordered Pan Am to reinstall engines in two planes only because it found that Pan Am had removed the engines in violation of the temporary restraining order. Furthermore, the court gave Pan Am the option of having Evergreen undertake the work to swap engines in the remaining planes.
 
 
 21
 Pan Am's strongest argument is that the escrow payments were beyond the court's authority.[5] However, these payments were not fines or administrative claims, as Pan Am contends. Instead, they were held in escrow as security for Evergreen. They remained in escrow until Pan Am and Evergreen entered into a settlement agreement providing for transfer of the escrow funds to Evergreen. Under the terms of the settlement, the funds were used to partially offset Evergreen's $8.3 million administrative claim against Pan Am. Therefore, Pan Am suffered no harm from these payments, which in any case were surrendered voluntarily to Evergreen.
 
 
 22
 Pan Am also argues that the injunctions are void because the court failed to require Evergreen to post bond. It contends that Oregon law applies under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). However, this is a procedural rather than substantive issue, and thus federal law applies. Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257, 273-74 (9th Cir.1964) (diversity case applying federal rule requiring security for injunction).
 
 
 23
 Pan Am contends that the injunctions would be void under federal law as well. It cites Pioche for the proposition that an order must be reversed for failure to require bond. However, the court in Pioche reversed for failure to comply with Fed.R.Civ.P. 65(d). Id. at 274. The rule requiring the posting of bond prior to issuance of an injunction is Fed.R.Civ.P. 65(c).
 
 
 24
 Other cases cited by Pan Am state only that the trial judge must consider the imposition of a bond. See, e.g., Coquina Oil Corp. v. Transwestern Pipeline Co., 825 F.2d 1461, 1462 (10th Cir.1987); Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp., 627 F.2d 44, 54 (7th Cir.1980). The district court's preliminary injunction order stated, "The Court further finds that plaintiffs shall post no security for issuance of this Order...." At a May 10 hearing, the court explained, "I didn't perceive any need for a bond because the defendants at the outset had confessed a default. There was no defense that was to be asserted and no bond necessary." Thus, the court considered but rejected the need for imposition of a bond.
 
 
 25
 Pan Am's final claim is that, because the injunctions are void, the district court erred in dismissing its counterclaims for conversion and abuse of process on summary judgment. Even had the injunctions been void, the abuse of process counterclaim could not succeed because an element of that claim is malicious intent. Pan Am has not shown that Evergreen acted maliciously. Nor is there any basis for a conversion claim. As discussed above, Evergreen received nothing from Pan Am except property to which it was entitled, and funds released through a voluntary settlement with Pan Am.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In re Pan Am Corp., 125 B.R. 372 (S.D.N.Y.1991), aff'd per curiam, 929 F.2d 109 (2d Cir.1991)
 
 
 [2]
 The leases specified that Pan Am's filing of a bankruptcy petition would constitute a default, and that default would "[c]ause Lessee, upon written demand of Lessor and at Lessee's expense, to, and Lessee shall, promptly return all or such part of the Aircraft as Lessor may demand to Lessor at such location in the continental United States of America as selected by Lessor in the manner and condition required by, and otherwise in accordance with all of the provisions of Section 9 hereof as if such Aircraft were being returned at the end of the Term...."
 
 
 [3]
 The record does not contain a breakdown of the funds in the account. Apparently, four planes had to be flown to JFK to comply with the order. The funds in the account included $104,000 for the return of one plane (at $3,000 an hour), $174,000 for the return of the other three planes, and additional funds for the return of the engines
 
 
 [4]
 Because the injunctions had collateral consequences that form the basis of the counterclaims, we consider the validity of the injunctions despite our earlier dismissal of Pan Am's challenge to their validity as moot
 
 
 [5]
 Pan Am cites In re Airlift Int'l, Inc., 761 F.2d 1503 (11th Cir.1985) for the proposition that the court used improper standards for determining an administrative claim. The case is not on point because it concerns payments made under an agreement to allow a debtor to continue using equipment after making payments due to the creditor. There was no such agreement between Pan Am and Evergreen