### In re CENTRAL FLORIDA METAL FABRICATION, INC., Debtor.

**Bankruptcy No. 93–00270.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

Oct. 13, 1995.

---

120

Lisa Cohen, Gainesville, FL, for Debtor.

Robert Olsen, Tampa, FL, for Tappouni.

Jim Bennett, Asst. U.S. Trustee, Tallahassee, FL.

### ORDER ON APPLICATION FOR ADMINISTRATIVE EXPENSE

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the application of Tappouni Mechanical, Inc.

(Tappouni) of the allowance of an administrative expense in this yet to be confirmed chapter 11 case. The claim is based on damages allegedly incurred as the result of the debtor's post-petition breach of a prepetition contract. A hearing was held on September 6, 1995 at which time the parties presented the court with a stipulation of facts upon which the claim is based. The debtor and two other administrative expense claimants have objected to the allowance of Tappouni's claim as an administrative expense.

The following facts have been stipulated to between the debtor and Tappouni:

1. Tappouni and the debtor entered into the subject contract pre-petition, on or about February 15, 1993, whereby the debtor was to furnish an "HVAC duct system" and install said system and accessories, as a subcontractor for Tappouni on the construction of the St. John's County Judicial & Permitting Building in St. Augustine, Florida.

2. On or about September 16, 1993, the debtor filed its voluntary Chapter 11 bankruptcy petition. At the time, the debtor did not believe it owed Tappouni any money; therefore, Tappouni was not listed on the creditors' matrix and did not receive notice from the Bankruptcy Court of the commencement of the bankruptcy. Tappouni was listed on the debtor's Schedule B as an account receivable. The subject contract with Tappouni was not listed on the debtor's schedule of executory contracts.

3. Shortly after the bankruptcy petition was filed, Tappouni was advised by one of its vendors that the debtor had filed bankruptcy. This vendor is located in Gainesville, Florida, where the debtor is located. Tappouni's main office is located in Tampa, Florida, and the subject construction project was being coordinated out of Tappouni's Tampa, Florida, office. This was Tappouni's first knowledge of the bankruptcy.

4. Upon learning of the Debtor's bankruptcy, Tappouni immediately contacted the debtor to inquire what, if any, impact the bankruptcy would have on the subject contract. The debtor assured Tappouni that the bankruptcy was filed only because of a dispute between the debtor and its major lender, First Union Bank. The debtor further assured Tappouni that the dispute with First Union would be resolved, and the bankruptcy dismissed, within a month or two. The debtor finally assured Tappouni that neither the subject contract nor any other aspect of the debtor's business would be impacted by the bankruptcy. The debtor insisted that everything should remain business as usual.

5. Subsequent to the initial communications between the debtor and Tappouni, there were no further discussions between the debtor and Tappouni regarding the bankruptcy until Tappouni filed its Application for Administrative Expense.

6. Subsequent to its initial communications with Tappouni, from approximately the end of 1993 until February 1994, the debtor continued to perform on the subject contract, and continued to accept payments from Tappouni. Tappouni continued to accept performance from the debtor and to make payments to the debtor.

7. In February 1994, a dispute arose between the debtor and Tappouni regarding the subject contract. As a result, the debtor ceased performance and Tappouni exercised its rights to take over and complete the subject contract. Thereafter, the debtor and Tappouni discussed periodically whether one owed the other any money as a result of the subject contract.

## I

Tappouni, in support of its Motion for Administrative Expense, argues that the "Debtor, by its own actions, omissions and representations, has assumed the subject contract or, at the very least, is estopped from or has waived its rights to reject the subject contract." *Tappouni's Memorandum of Law* at 7. Moreover, Tappouni argues that if the contract has not been assumed, the debtor in possession cannot reject the contract, because it is no longer executory.

Since a debtor in possession "may assume or reject any executory contract,"[1] I

---

1. 11 U.S.C. § 365(a) (1994 and Supp. I 1995).

For administrative convenience, all further refer-

begin my analysis by determining whether the subject contract is executory. According to legislative history, "executory contracts include contracts on which performance remains due to some extent on **both** sides." *In re Noco, Inc.*, 76 B.R. 839, 843 (Bankr. N.D.Fla.1987) (citing *2 Collier on Bankruptcy*, Par. 365.02 at 365–12 (15th Ed.1982) (emphasis in original)). The courts and legal commentators have further refined an executory contract's definition as follows:

> A contract is deemed executory when it is unperformed to the extent that any party's failure to perform would be a material breach excusing the performance of the other party.

*U.S.P.S. v. Dewey Freight Sys., Inc.*, 31 F.3d 620 (8th Cir.1994) (citing *Cameron v. Pfaff Plumbing & Heating, Inc.*, 966 F.2d 414, 416 (8th Cir.1992)); *In re Noco, Inc.* at 843 (citing Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 **Minn.L.Rev.** 439, 460 (1973)). Since the parties have stipulated that post-petition the debtor in possession "ceased performance and Tappouni exercised its rights to take over and complete the subject contract" and both parties were concerned "whether one owed the other any money as a result of the subject contract," I find that a material breach occurred. Accordingly, the subject contract was executory at the time of the filing of the petition, and, at the time of the breach.

Bankruptcy courts in the Eleventh Circuit must handle an executory contract breach by a debtor in possession differently depending on the actions of the debtor in possession. Generally, three scenarios exist: (1) the debtor in possession has not assumed the contract, (2) the debtor in possession has assumed the contract prior to the reorganization plan, or (3) the debtor in possession has entered into a new executory contract during reorganization proceedings. *In re Airlift Intn'l, Inc.*, 761 F.2d 1503, 1508–9 (11th Cir.

1985). In the instant case, the third scenario is not applicable since this contract is not a post-petition contract.[2] Consequently, I must determine whether the first or second scenarios apply.

Under the first scenario, where the contract is not assumed, the claim is not given administrative priority. Instead, it is limited by § 502. When the executory contract is rejected, the claim is deemed to have "arisen before the date of the filing of the petition." § 502(g). The result in this case would be an unsecured claim. A threshold question which arises in this case is whether the debtor in possession's subsequent breach is synonymous with a rejection. The Eleventh Circuit addressed such a possibility in *In re Airlift Intn'l, Inc.*, 761 F.2d at 1509, where it determined that a breach of an executory contract not assumed "prior to confirmation, ... is deemed to have occurred pre-petition, giving rise to a pre-petition claim under section 502(g), but not an administrative expense under section 503(b)." Therefore, the Court can treat a breach of the contract as a rejection.

Under the second scenario, where an executory contract is assumed, a creditor may seek an administrative expense when a debtor in possession subsequently breaches the contract. § 503(b).[3] Under this scenario, and these facts, I must consider whether the debtor in possession can assume an executory contract without court approval, or, if it cannot, whether, by estoppel or waiver theories, I should treat the contract as if it were assumed.

## II

I can quickly dispense with Tappouni's assertion that the debtor in possession assumed the contract. Under § 365, unless the Code has expressly exempted a

---

ences to the Bankruptcy Code will be by section number only.

2. Additionally, Tappouni concedes that the debtor in possession did not enter into a new contract. Tappouni's Memorandum of Law reads: "Tappouni's contract with the Debtor is clearly pre-petition." *Tappouni's Memorandum of Law* at 6.

3. Section 503(b) provides, in pertinent part,

> "After notice and a hearing, there shall be allowed administrative expenses, ... [for] actual, necessary costs and expenses of preserving the estate...."

certain type of executory contract, the power of a debtor in possession to assume an executory contract is subject to court approval. *In re Univ. Medical Ctr.*, 973 F.2d 1065, 1076 (3d Cir.1992) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521, 104 S.Ct. 1188, 1193, 79 L.Ed.2d 482 (1984)). Presently, Congress has enacted exceptions only for collective bargaining agreements and certain real property leases. *See* § 1113 and § 365(h). Congress could have provided exceptions for construction contracts, but chose otherwise. Therefore, I find that the Legislature did not intend for this executory contract to be assumed except by court approval. *Id.* at 1074–75. Since there has been no court approval, no assumption has occurred.

### III

■ Tappouni next argues that since the Court had not previously approved an assumption or rejection, the executory contract cannot now be rejected since the contract is no longer executory. Tappouni argues that in order to be assumed or rejected a contract must be executory at both the time of filing, and the date of assumption or rejection. *See In re Innkeepers of New Castle, Inc.*, 671 F.2d 221, 226 (7th Cir.1982). While as a matter of law this position is correct, Tappouni neglects the obvious: rejection occurred when the debtor in possession breached the contract. *See Airlift Intn'l*, 761 F.2d at 1509.

Since executory contracts, not expressly assumed, can be deemed rejected by the court as of the date of the breach, the debtor in possession's breach merely gives "rise to a pre-petition claim under Section 502(g)." *Id.* Therefore, Tappouni is not entitled to an administrative expense under an assumption theory.

4. Tappouni mistakenly relies upon *In the Matter of Garfinkle*, 672 F.2d 1340 (11th Cir.1985), which can be distinguished since it involved the use of waiver and estoppel against a purchaser of land from the bankruptcy estate. Tappouni also relies upon *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966), which held that, regardless of the unambiguous Bankruptcy Act's language, a bank without notice of a bankruptcy filing was not liable for checks it processed postpetition because of

### IV

■ Next, Tappouni argues that the debtor in possession has waived its right to reject the contract or is estopped from rejecting the contract. This argument is likewise flawed since the Code's provisions do not allow a debtor in possession to either expressly or impliedly assume an executory contract without court approval. § 365. Even if the Court could ignore § 365, Tappouni's waiver and estoppel theories are not applicable.

In support of Tappouni's proposition that waiver and estoppel can be applied against debtor in possession, Tappouni cites to *In re Ranch House of Orange–Brevard, Inc.*, 773 F.2d 1166 (11th Cir.1985), *Ten–Six Olive, Inc. v. Curby*, 208 F.2d 117 (8th Cir.1953), *In re Southern Motel Assoc. Ltd.*, 81 B.R. 112 (Bankr.M.D.Fla.1987), and *In re Haute Cuisine*, 57 B.R. 200 (Bankr.M.D.Fla.1986).[4] These cases, while admittedly waiver and estoppel cases, do not support the use of waiver and estoppel to prevent a debtor in possession or trustee from rejecting an executory contract. These cases involve lease disputes where waiver and estoppel are used against the lessor, rather than against a party to an executory contract. Furthermore, these cases involve waiver and estoppel against a party other than the debtor in possession or trustee. I, therefore, find these cases do not apply.

Notwithstanding the lack of supporting cases, the Court will discuss Tappouni's waiver and estoppel theories. According to *In re Garfinkle*, 672 F.2d 1340 (11th Cir.1982), waiver requires:

(1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an

"an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin*'s application is questionable today since it interpreted the old Bankruptcy Act and it could have usurped the Legislature's lawmaking power. This runs counter to the United States Supreme Court's mandate of interpreting the Code according to its terms. *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992).

intention to relinquish such right, privilege, advantage, or benefit.

*Id.,* at 1347. Tappouni's argument presumes that a debtor in possession has an absolute right to assume or reject an executory contract. However, this logic is misplaced.

 A debtor in possession may only assume or reject executory contracts for the benefit of the estate. The debtor in possession holds no absolute right to waive and § 365 subjects assumption or rejection by the debtor in possession to court approval. Therefore, under § 365, the debtor in possession has a limited power, rather than an unconditional right, to assume or reject contracts based upon their benefit or detriment to the estate. Thus any waiver by a debtor in possession, whether expressed or implied, is ineffective against the estate. Therefore, Tappouni is not entitled to an administrative expense under a waiver theory.

## V

 Next, Tappouni argues that the debtor in possession is estopped from denying it assumed the contract because Tappouni relied upon the debtor's representations and omissions. The parties have stipulated, along with other facts, the debtor in possession "assured Tappouni [that] ... everything should remain business as usual," Tappouni was "not listed on the creditors' matrix," and the "subject contract was not listed on the debtor's schedule of executory contracts." As a result, Tappouni argues the debtor in possession should be estopped from denying the assumption of the contract.

As a general rule estoppel requires:

(1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated.

*In re Garfinkle,* 672 F.2d at 1347. I note that some uncertainty exists as to whether a party which seeks to apply estoppel must demonstrate whether it reasonably, or with good faith, relied upon the other party. *Compare United States ex rel. Krupp Steel*

*Products, Inc. v. Aetna Ins. Co.,* 923 F.2d 1521, 1526 & n. 12 (11th Cir.1991) (applying equitable estoppel doctrine approved in *Heckler v. Community Health Serv. of Crawford,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984)) *with Marine Transp. Serv. Sea–Barge Group, Inc. v. Python High Performance Corp.,* 16 F.3d 1133, 1138–9 (11th Cir.1994).

In any event, I need not decide which reliance standard controls since Tappouni has failed to demonstrate any detriment resulting from such reliance. To prove detrimental reliance, Tappouni must show that it changed its position in reliance on the actions of the debtor in possession and that it incurred damages as a result of its change of position. The damages which Tappouni claims that it has incurred, i.e., the cost to complete the contract, would have been incurred had the debtor in possession ceased work and rejected the contract immediately following the filing of its chapter 11 petition. There has been no showing that the continued performance by the debtor in possession without an assumption or rejection of the contract resulted in any additional damages separate and distinct from those which would naturally result from a breach of the contract at any particular point in time. Thus, Tappouni has failed to show that it incurred any damages as a result of the debtor in possession's continued performance of the contract and, therefore, its reliance was not detrimental. Accordingly, Tappouni cannot recover an administrative expense under an estoppel theory.

## VI

 Under one remaining theory, Tappouni might be allowed an administrative expense for non-contract damages. An estate may be liable for damages which occur from its continued operations. In *In re N.P. Mining Co, Inc.,* 963 F.2d 1449 (11th Cir. 1992), the court found that punitive fines imposed for environmental violations which occurred as a result of the ongoing operations of a coal mining business were administrative expenses. Such damages which occur from post-petition operations are recoverable as administrative expenses under this theory because they are distinct and separate from

any damages which result from a post-petition contract breach. Nevertheless, Tappouni failed to show, or even to make an assertion, that the debtor in possession's continued performance or failure to reject resulted in additional damages. *See U.S.P.S. v. Dewey Freight,* 31 F.3d at 624 (finding that under a recoupment theory non-debtor USPS was not entitled to a post-petition administrative claim unless it showed that the debtor in possession benefitted). Therefore, Tappouni is not entitled to an administrative expense under this alternative theory.

Accordingly, it is, therefore,

ORDERED AND ADJUDGED that:

1. Tappouni's Application for Administrative Expense be and same is hereby DENIED.

2. Tappouni's claim shall be allowed as a general unsecured claim, the amount of which shall be liquidated in separate proceedings according to the parties' previous stipulation.

DONE AND ORDERED.