**In the Matter of D & S ELEC-TRICAL/MECHANICAL CO., INC., Debtor.**

**In re D & S CONSULTING ENGINEERS, INC., Debtor.**

**Nos. 02–82791–JAC–11, 02–82792–JAC–11.**

United States Bankruptcy Court, N.D. Alabama, Northern Division.

April 7, 2003.

Cynthia R. Slate–Cook, Decatur, AL, for Debtor.

Walter McArdle, Birmingham, AL, for SouthTrust.

### ORDER

JACK CADDELL, Bankruptcy Judge.

The issue presented in this matter is what is the measure of damages under a lease agreement where the lease is accepted pre-confirmation and subsequently rejected pre-confirmation.

D & S Consulting Engineering, Inc. and D & S Electrical/Mechanical, Inc., hereinafter collectively referred to as "D & S" or "debtor," filed bankruptcy on June 26, 2002.[1] On November 14, 2002, D & S assumed certain Master Lease Agreements with SouthTrust Bank. The Master Lease Agreements cover twelve company vehicles that the debtor leased. The debtor used the vehicles for approximately one month. Then, on December 20, 2002, the debtor filed a notice of rejection of the assumed leases and began to surrender the vehicles to SouthTrust.

SouthTrust contends that it is entitled to an administrative expense claim, in the amount of $54,819.95, based on the full measure of damages provided for under the Master Lease Agreements. SouthTrust argues that the balance due under the leases includes the stipulated loss or residual value for each vehicle as specified in the agreements. The lease agreements provide in paragraph 15 that the lessor, SouthTrust, is entitled to "declare the Stipulated Loss Value immediately due and payable" upon the occurrence of any event of default. Paragraph 13 of the lease agreements defines the stipulated loss value as follows:

13. STIPULATED LOSS VALUE. Lessor and Lessee agree that Lessor's damages upon a Casualty Loss or Event of Default are uncertain and not capable of exact measurement because the value of the Equipment at the expiration of the Lease is uncertain, and therefore agree that the "Stipulated Loss Value" of any item of Equipment shall be specified in an Exhibit to be attached to the Equipment Schedule for such item of Equipment. The Lessee shall pay the Stipulated Loss Value specified for the month immediately preceding the date of the event giving rise to the payment of the Stipulated Loss Value.

There is not an exhibit attached to the corresponding motor vehicle lease sched-

---

1. D & S Consulting Engineering, Inc. operates as a consulting engineer firm that provides services to industrial plants and manufacturers. D & S Electrical/Mechanical, Inc. was formed as a companion company to D & S Consulting Engineers, to build projects for clients using the services of the consulting firm.

ules. Instead, the schedules contain a list of various terms including the term "projected value." The projected value of each vehicle is calculated as 20% of the lessor's capitalized cost in each vehicle. The lessor's capitalized cost of each vehicle is also set forth in the schedule. SouthTrust argues that the terms stipulated loss value and projected value are the same and that it is entitled to the stipulated loss value, projected value or residual value regardless of the terminology used. SouthTrust calculates its damages under the lease agreements by using the projected value listed in the lease schedules.

The debtor acknowledges that South-Trust is entitled to an administrative expense claim based on the assumption and later rejection of the leases, but argues that the lease agreements do not entitle SouthTrust to add the stipulated loss or projected value to the total amount of damages due for default thereunder. The debtor suggests that SouthTrust is only entitled to an administrative expense claim for the unpaid monthly rental fees which totals approximately $11,000.00.

### CONCLUSIONS OF LAW

**Under 11 U.S.C. § 365, upon assuming a lease, the debtor becomes liable for all future obligations under the contract. Upon default, the creditor is entitled to an administrative expense claim for any deficiency on the entire agreement resulting from rejection of an unexpired lease previously assumed.**

 Section 365 of the Code authorizes the trustee or a debtor-in-possession to reject, assume or assign executory con-

tracts and unexpired leases.[2] The Eleventh Circuit, in *GATX Leasing, Corp. v. Airlift Int'l, Inc. (In re Airlift Int'l, Inc.)*, 761 F.2d 1503, 1508–09, (11th Cir.1985), has explained the difference in the effect of a breach of an unexpired lease in three different scenarios: "(1) where the trustee elects not to assume an ongoing executory contract or unexpired lease, (2) where the trustee assumes an ongoing executory contract or unexpired lease prior to confirmation, and (3) where the trustee during reorganization proceedings enters into a new executory contract." In the first scenario, where an unexpired lease is not assumed prior to confirmation, breach of the lease is deemed to have occurred pre-petition. The claim resulting from the breach is a general claim under § 502(g), not an administrative expense claim. In the second and third scenarios, where the trustee or DIP assumes an unexpired lease before confirmation or enters into a new lease, the Eleventh Circuit explained that a breach of the lease is deemed to have occurred post-petition. The claim resulting from the breach is an administrative expense claim under § 503(b) of the Code regardless of whether the lease "involved an actual or necessary cost or expense of preserving the estate."[3] The court noted in dicta that had the debtor "been required to assume the entire contract under § 365, upon default, [the creditor] would have an administrative expense claim for any deficiency on the *entire* note after it repossessed and sold the [property]."[4]

In a case that is similar to the one before the Court, *Case Credit Corp. v. Baldwin Rental Centers (In re Baldwin Rental Centers)*, 228 B.R. 504 (Bankr.

---

**2.** 11 U.S.C. § 365(a).

**3.** *GATX Leasing, Corp. v. Airlift Int'l, Inc.(In re Airlift, Int'l, Inc.)*, 761 F.2d 1503, 1509 at n. 5 (11th Cir.1985).

**4.** *Id.* at 1503.

S.D.Ga.1998), the bankruptcy court held that the liquidated damages provision in the Chapter 11 debtor's equipment leases was enforceable and that the damages calculated thereunder were entitled to administrative expense priority. In *Baldwin,* the creditor filed a motion to have certain equipment lease payments allowed as an administrative expense. The debtor-in-possession had assumed five of fourteen leases preconfirmation, and then defaulted on same. The assumed leases contained a liquidated damages provision in which the lessee agreed to pay lessor the following upon default: 1) unpaid rent, plus 2) present value of future lease payments, plus 3) purchase option price or residual value, plus 4) reasonable attorney fees, minus 5) present value of sale proceeds. The creditor requested that this entire amount be given administrative expense priority, but the debtor contended that the creditor was not entitled to receive an administrative expense claim for the future rent on the unexpired term of the assumed leases because such expenses did not confer a benefit to the estate. The court held that all enforceable damages resulting from rejection of the assumed leases, including the present value of future rents, are administrative expenses.

First, to determine whether the liquidated damages provision was enforceable, the *Baldwin* court looked to state law, § 11–2A–504(1) of the Georgia Code, which is identical to § 7–2A–504(1) of the Alabama Code. Article 2A of the UCC governs the enforceability of a liquidated damages provisions contained in lease agreements. A liquidated damages provision in a lease agreement is enforceable so long as the provision is "reasonable in light of the then anticipated harm caused by the default." The Georgia bankruptcy court considered three factors to determine the reasonableness of the provision in this case: 1) the injury caused by the default must be difficult or impossible of accurate estimation; 2) the parties must intend to provide for damages rather than a penalty; and 3) the stipulated sum must be a reasonable pre-estimate of the probable loss. This inquiry must be made as of the time the parties entered into the agreement. Parties to lease transaction are free to negotiate the amount of liquidated damages, restrained only by the rule of reasonableness. The court concluded that liquidated damages agreements are reasonable so long as the formula "puts the lessor in no better position than it would otherwise be in had the lease been fully performed."[5] Finally, the court noted that such formulas are likely to put the lessor in no better position than it would otherwise have been in if the formula includes a provision which reduces the balance of the lease payments to the present value and gives the lessee a credit for the amount the lessor either receives or would receive upon selling the subject property. In the case before the Court, the damages provision gives the debtor a creditor for the sale of the property, but it does not reduce the value of future lease payments to present value.

Having found that the liquidated damages provision in the leases was enforceable, the *Baldwin* court next looked at §§ 365 and 502 to determine whether the damages were entitled to an administrative expense priority. The court noted that §§ 365(g) and 502 indicate a clear intent by Congress to treat expenses arising from the rejection of an assumed lease differently than those arising from the rejection of a lease that was not previously assumed. Section 365(g)(1) provides that the breach of a lease that has not been previously assumed is deemed to have oc-

---

**5.** *Baldwin,* at 509.

curred prior to the filing date of the petition. Pursuant to § 365(g)(2), a claim arising from the rejection of a lease that was previously assumed is deemed to have occurred postpetition. Section 502(g) of the Code directs that a § 365(g)(1) expense be treated as a general unsecured claim. There is not a similar provision in § 502 for a § 365(g)(2) expense. The *Baldwin* court concluded that the "silence in § 502 clearly indicates Congress's intent to treat rejection of assumed leases as administrative expenses."

The official comment to the Alabama Code makes it clear that the type of liquidated damages provided for in the Master Lease Agreement in this case is the type of damages contemplated under the Alabama Code regardless of the terminology used. The pertinent part of the Official Comment to Alabama Code § 7–2A–504 reads as follows:

A liquidated damages formula that is common in leasing practice provides that the sum of lease payments past due, accelerated future lease payments, **and the lessor's estimated residual interest, less the net proceeds of disposition (whether by sale or re-lease) of the leased goods is the lessor's damages.** Tax indemnities, costs, interest and attorney's fees are also added to determine the lessor's damages. Another common liquidated damages formula utilizes a periodic depreciation allocation as a credit to the aforesaid amount in mitigation of a lessor's damages. A third formula provides for a fixed number of periodic payments as a means of liquidating damages. Stipulated loss or stipulated damage schedules are also common. Whether these formulae are enforceable will be determined in the context of each case by applying a standard of reasonableness in light of the harm anticipated when the formula was agreed to. (Emphasis added)

Section 7–2A–527 of the Code further provides with respect to a lessor's rights to dispose of goods upon default by a lessee as follows:

2) Except as otherwise provided with respect to damages liquidated in the lease agreement (Section 7–2A–504) or otherwise determined pursuant to agreement of the parties (Sections 7–1–102(3) and 7–2A–503), if the disposition is by lease agreement substantially similar to the original lease agreement and the new lease agreement is made in good faith and in a commercially reasonable manner, the lessor may recover from the lessee as damages (i) accrued and unpaid rent as of the date of the commencement of the term of the new lease agreement, (ii) **the present value, as of the same date, of the total rent for the then remaining lease term of the original lease agreement minus the present value, as of the same date, of the rent under the new lease agreement applicable to that period of the new lease term which is comparable to the then remaining term of the original lease agreement, and** (iii) any incidental damages allowed under Section 7–2A–530, less expenses saved in consequence of the lessee's default. (Emphasis added)

■ Based upon the foregoing the Court finds that SouthTrust is entitled to an administrative expense claim for the full measure of the damages as provided for by the Master Lease Agreement with the balance of the lease payments reduced to present value. Section 7–2A–103(u) of the Alabama Code defines present value as follows:

(u) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is deter-

mined by the interest rate specified by the parties if the rate was not manifestly unreasonable at the time the transaction was entered into; otherwise, the discount is determined by the court as a matter of law as a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

If the parties are not able to agree as to the present value of the remaining lease payments, a hearing shall be set to determine same.